## ELLA HEBRANSON v. FAIRMONT CREAMERY AND ANOTHER.[1]

November 4, 1932.

No. 29,009.

*G. P. Mahoney, John S. Morrison,* and *R. E. Faricy,* for relator.

*J. F. Boyles,* for employer and United States Fidelity & Guaranty Company, its insurer, respondents.

HOLT, J.

Certiorari to review a decision of the industrial commission denying relator compensation for the accidental death of her husband arising out of and in the course of his employment.

Compensation was denied solely because it was found that on and prior to June 30, 1931, the day of the accident, "the Fairmont Creamery, the above named employer, was conducting and operating a farm and had not elected to be bound by the Minnesota workmen's compensation act, and part 2 thereof [G. S. 1923 (1 Mason, 1927) § 4268] and that the injury to said employe resulting in his death occurred while engaged as a farm laborer for said employer." Hence it is incumbent on relator, if she is to prevail, to show that this finding is not sustained by the evidence.

[1]Reported in 245 N. W. 138.

There is no dispute concerning the facts. The Fairmont Creamery, the employer, is a corporation with headquarters at Omaha, Nebraska. It also operates a creamery at Moorhead, this state. About a mile south of Moorhead it owns and runs a 220-acre farm. The manager called it a demonstration farm. From 1,000 to 2,000 turkeys a year are raised thereon. During the summer there are kept as many as 2,700 hogs. A herd of approximately 125 cattle is kept, of which about 60 are milch cows. The surplus animals as they become fit for market are disposed of. Some 14 to 16 horses are kept at the farm. Some of these are used upon the ten milk routes operated by the creamery. The farm does not produce enough feed for all these animals. As much as 5,000 or 6,000 gallons of buttermilk is hauled from the creamery daily and fed to the hogs and turkeys. Hay and feed are bought. What is bought for the farm and the wages of the laborers are paid by the creamery, and all income from the farm goes to it. No separate account of the farming business is kept.

The deceased workman came to the farm on June 30, 1931, seeking work. He was at once employed at $1.50 per day and lunch and set to work on the haymow in the barn. In the afternoon he was found unconscious on the floor, having fallen down from the mow, and so injured himself that death came within two days thereafter.

A person or corporation may be engaged in two or more businesses or occupations. Benoy v. Torkelson, 161 Minn. 223, 201 N. W. 312; Durrin v. Meehl, 163 Minn. 325, 204 N. W. 22. The farm was not a necessary part of the creamery business. Undoubtedly it was thought that in its operation, if a number of turkeys and hogs were kept thereon, a profitable use might be made of a large part of a by-product of the creamery—the buttermilk. It is evident that the 60 milch cows could not furnish enough milk for the creamery or for the ten milk routes operated by the creamery by the horses and driver kept and boarded at the farm. The fact that some 5,000 to 6,000 gallons of buttermilk were procured from the creamery daily for the turkeys and hogs shows that the butter or cream

from the 60 milch cows on the farm was an insignificant quantity when considered in connection with the business of the creamery. The situation is also complicated by the fact that the expenses and proceeds of the farm were not kept separate from the main business of the creamery. We take it that its principal business was buying milk and cream for retailing on milk routes and for manufacturing and selling butter. This business could very well be conducted without farming. It also appears that the deceased was employed to do farm labor. He did that when injured. He was not employed as driver on a milk route.

Upon the facts hereinbefore stated, we cannot hold that there is no basis for the finding that the creamery was conducting a farm, that Hebranson was employed by the creamery as a laborer on that farm, and that the injury resulting in his death occurred while so engaged as a farm laborer. There is no room for differentiating the instant case from Greischar v. St. Mary's College, 176 Minn. 100, 222 N. W. 525, as far as justification for the triers of fact to reach the same finding or conclusion from the evidence in each case is concerned.

In determining whether a workman is a farm laborer, and hence not within the workmen's compensation act, the nature of the employment is the test rather than the particular item of work he is doing when injured. Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428; Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124. In the Peterson case the employe was employed as a carpenter by a bank to repair buildings on its farms, and the commission determined he was not a farm laborer. The finding was sustained. In Klein v. McCleary, 154 Minn. 498, 192 N. W. 106, a case particularly relied on by relator, the employer operated a summer resort, and the injured employe was found to have been hired as a servant in running the summer resort; and hence the work in clearing the ground of stumps, in which he was engaged when fatally injured, was not farm labor, but belonged to the operation of the resort. It was for the commission in that case, as it was in the one at bar, to draw the inferences from the

record and find whether or not the injury occurred in the employment of the workman as a farm laborer. If it did, there could be no compensation, for concededly the employer was not under the act. The Peterson case, 180 Minn. 40, 230 N. W. 124, as Mr. Justice Stone points out, is not at all in conflict with Shafer v. Parke, Davis & Co. 192 Mich. 577, 159 N. W. 304, which is almost on all fours with the instant case, holding that the employe was a farm laborer and not under the compensation act, although the farm upon which he was employed when hurt was much more essential to the conduct of the employer's main business than the farm here. Attention is also called to Bates v. Shaffer, 216 Mich. 689, 185 N. W. 779, which follows Shafer v. Parke, Davis & Co. 192 Mich. 577, 159 N. W. 304.

We deem the finding attacked sufficiently supported by the record. The decision is affirmed.