# ALBERT HOUSER v. OSMAN TEMPLE ANCIENT ARABIC ORDER NOBLES OF MYSTIC SHRINE AND OTHERS.[1]

June 9, 1933.

No. 29,449.

*Edward A. Knapp,* for relator.
*Hugo V. Koch,* for respondent.

*HOLT, Justice.*

Certiorari to review a decision of the industrial commission awarding Albert Houser, respondent, compensation for an accidental injury.

There is no material conflict in the evidence. Relator is a fraternal organization incorporated under the laws of this state. It carries on no business. It engages in no work for profit. Through a committee relator arranged for a circus to perform for a week beginning February 15, 1932, at the St. Paul auditorium. The same circus, under an arrangement with a circus committee of the Zurah Temple of Minneapolis, thereafter performed for a week in the

[1] Reported in 248 N. W. 827.

auditorium of that city. The purpose of relator in arranging for the circus was to raise funds to defray expenses to the Imperial Council. A similar circus had performed for a week in two prior years. The chairman of relator's circus committee was C. P. Bull. It appears that in the prior years, as well as in 1932, Dennie Curtis was engaged to give the circus. Mr. Curtis was in that business, traveling through the country. He planned the acts and selected the performers and hands to handle the property. Curtis was to receive $750 for the week. The relator's committee was to pay all transportation from Chicago and return. A written contract was signed by the committee and Dennie Curtis. Therein Curtis was designated as the performer and the committee as the manager. This contract contains no provision as to how the wages of the performers or property men are to be paid or who is to pay them. It contains this provision:

"It is hereby agreed that in case of accident of any kind or nature to the performer or any of his employes or animals during the life of this contract that he hereby waives claims for damages against Osman Temple or any of its officers."

This recognizes respondent and the others hired by Curtis as Curtis's employes. Respondent was engaged by Curtis at Chicago, and his wages fixed at $40 for the week. Respondent never talked to the committee or its chairman touching his employment or wages. Though nothing is said in Curtis's contract, it is admitted that the committee or Mr. Bull was to pay the expenses connected with giving the circus in addition to the $750 Curtis personally was to receive; that is, the performers' and property men's salaries or wages were to be paid by Mr. Bull at the end of the week. On the 19th of February Mr. Houser, whose duty was to see that the loop-the-loop car used in the circus did not get out of control, fractured his leg in an attempt to stop the car.

Two questions are raised by relator. It denies that respondent was in its employ and contends that even if it be held that such relation exists respondent's employment for a week was casual and

not in the usual course of relator's business or occupation and hence not within the compensation act.

The compensation act, 1 Mason Minn. St. 1927, § 4326(d), reads:

"The term 'employer' as used herein, shall mean every person not excluded by section 8, who employs another to perform a service for hire and to whom the 'employer' directly pays wages, and shall include any person or corporation, co-partnership or association or group thereof," etc.

Section 8 of the act (1 Mason Minn. St. 1927, § 4268), as far as here applicable, reads:

"This act shall not be construed or held to apply to any common carrier by steam railroad, domestic servants, farm laborers or persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession or occupation of his employer."

It may be conceded that relator was the employer of respondent at the time he received his accidental injury. Mr. Bull testified that the $750 specified in the contract with Curtis was for his personal services, and that all additional help that was required in putting on this circus at the auditorium "was to be paid separately by Osman Temple Circus," that is, by the circus committee, of which Mr. Bull was the chairman. Although Mr. Bull personally did not hire respondent or any other performer or "prop man," the commission could find under the definition of employer in the quoted part of the compensation act that relator was respondent's employer, for the wages were paid directly by it to respondent. Curtis, as between respondent and relator, may be considered the latter's agent in hiring everyone connected with the circus performance. In that view, as agent, Curtis had control of the men, he engaged them for certain tasks, he placed each where he deemed proper, he could discharge them. Curtis, hired at the wage of $750 for a week to conduct the circus, was no more an independent contractor than the foreman of a construction crew of a corporation erecting a large building or structure, who is paid a large weekly wage and

who has full control of his crew, including the authority to hire and discharge, can be considered an independent contractor and the employer of the men in the crew. This is not saying that respondent might not have held Curtis as his employer if ignorant of the agency conferred by relator. But the commission had before it the fact that relator was to pay the wages of the men the same as the wages of Curtis, and the definition in the act of "employer," and we cannot disturb the finding that respondent was in its service when injured. Curtis, in what he did and was to do in putting on the circus, could be found to be relator's agent.

Relator cites Campbell v. Connolly Contracting Co. 179 Minn. 416, 229 N. W. 561; but there the Connolly Contracting Company rented its machine and its operator for a fixed price per day to M & D company. As part of the agreement between the two companies the wages of the operator were to be paid by the M & D company. But the Connolly company would not rent the machine or let it be operated unless its own employe was allowed to do it. The case of Wyckoff v. Wunder, 107 Minn. 119, 119 N. W. 655, is also cited. That was a case where the defendant, a contractor, made an agreement to place his crew, of which plaintiff was a member, and equipment on the job of completing the armory in Minneapolis, the armory commission to pay the cost of labor and materials plus five per cent to the defendant. It was there held that it was not necessary to determine the relation existing between the defendant and the commission, but that, conceding the defendant was the agent of the commission, it did not follow that Wunder could not and did not assume the relation of master to the plaintiff.

Here where under the contract with Curtis for a wage he was to employ all men needed but relator was to pay the wages and all expenses, it cannot be said that the industrial commission is not authorized to find that Curtis was in everything he did in connection with giving the circus in St. Paul the mere agent and employe of relator. It does not appear that the $750 salary paid Curtis was for the use of any of the property or equipment of the circus. Mr. Bull clearly testified that the amount paid Curtis was solely for his personal work.

The employment of a person for one week must be considered casual. It was clearly understood when relator authorized Curtis to engage respondent that the employment was for a week only. Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426, and the authorities there cited from other jurisdictions clearly establish this employment to be casual. However, if the employment was in the usual course of the trade, business, profession, or occupation of relator, respondent was covered by the compensation act even though casual. Giving circuses or engaging performers or property men for circus purposes cannot well be classed as in the usual course of the trade, business, profession, or occupation of a fraternal organization. Certainly it may not be denominated the usual business or occupation of such an organization as Osman Temple. To be sure, fraternal organizations have use for money, and the regular dues and voluntary contributions do not as a rule produce all that is needed. At times devious ways are resorted to in order to provide funds. But a fraternal organization, by occasionally resorting to a circus or a play or some similar scheme to raise money for some purpose outside the scope of its regular activities, does not make such circus, play, or scheme a usual part of its business or occupation. It must be held similar to the incidental work held not to be in the usual course of the trade, business, profession, or occupation of the employer of the casual employe in the following cases: State ex rel. Lennon v. District Court, 138 Minn. 103, 164 N. W. 366; State ex rel. Foss v. Nelson, 145 Minn. 123, 176 N. W. 164; Eichholz v. Shaft, 166 Minn. 339, 208 N. W. 18; Sink v. Pharaoh, 170 Minn. 137, 212 N. W. 192, 50 A. L. R. 1173; Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426; Ostlie v. H. F. Dirks & Son, 189 Minn. 34, 248 N. W. 283.

The award of the commission is set aside and its decision reversed.

*WILSON, Chief Justice,* and *HILTON, Justice,* took no part.