ANDREW HAGELSTAD v. MARTIN USIAK.[1]

January 19, 1934.

No. 29,720.

*John Swinland,* for relator.

*Jenswold, Jenswold & Dahle* and *Homer Gannaway,* for respond-·ent.

*HOLT, Justice.*

*Certiorari* to review a decision of the industrial commission awarding compensation for an accidental injury.

[1]Reported in 252 N. W. 430.

Respondent and companion were engaged by relator to cut some cordwood on a 40-acre tract of land, owned by him, at $1.25 per cord. They were to board themselves, but relator permitted them to occupy a shack on his land free of charge. When 14½ cords had been cut the work ceased because relator was forbidden to haul the wood over a neighbor's land, there being no other practical way to get the wood out. A few days afterward relator, for $20, bought of a power company some timber stumpage, and respondent and his companion were permitted to cut this into cordwood on the same terms as they had started to do on relator's farm. In all 109 cords were cut, when respondent, in felling a tree, was caught under it and fractured a leg.

There was an employment to cut cordwood. No quantity or time was agreed on. Relator could stop the work at any time. Respondent could quit whenever he chose. To understand the questions raised relator's situation should be stated more in detail. He owned 66 acres of land, part of which borders Fish Lake in St. Louis county. He is known by his neighbors as a farmer, although no more than 10 or 12 acres are under cultivation. He raises turkeys and chickens. The home and buildings on the land have been erected by him out of the timber on the farm. For that purpose he had installed a small sawmill. No sawing has been done for others. It has been confined to logs cut from his own farm. Occasionally he has sold some lumber not needed. He has erected two summer cabins on the shore of the lake and has 14 boats which he rents to fishermen. He also has a small building where he sells candy, soft drinks, tobacco, and bait during the summer fishing season. For his own use relator needs 25 to 30 cords of wood a year. Except the cordwood cut by respondent and his companion from the stumpage bought of the power company, as above stated, relator has cut no cordwood other than from his own farm. The 109 cords cut by respondent and his companion relator hauled to his home and, except 25 or 30 cords thereof needed for fuel, sold to his son to pay for money he had borrowed.

Error is assigned for the failure to find that respondent was an independent contractor, and for finding that he was an employe. State ex rel. Virginia & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211, and the statute therein referred to (1 Mason Minn. St. 1927, § 4290) go far to sustain the industrial commission on this point. So do Lampi v. Koponen, 178 Minn. 133, 226 N. W. 475, and Barker v. Bemidji W. P. Co. 184 Minn. 366, 238 N. W. 692.

The next error assigned is that the industrial commission vacated and set aside the finding of the referee that respondent's employment by relator was "casual and not in the usual course of the trade, business, profession or occupation of" relator (1 Mason Minn. St. 1927, § 4268). We have held that to exclude an employe from the compensation act the two facts must exist, viz. the employment must be casual and not in the usual course of the business, etc. of the employer. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636. If the employment is in the usual course of the employer's business the employe is within the compensation act no matter whether the employment is casual or regular for definite periods. But it is not always true that if the employment is for a definite and considerable period it comes within the compensation act. The employer may not be in an industrial or commercial business or occupation embraced in the act. Eichholz v. Shaft, 166 Minn. 339, 208 N. W. 18. However, the employer of a noncasual employe may extend the scope of the employment beyond the usual course of his business as in O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636, and Nygaard v. Throndson Brothers, 173 Minn. 441, 217 N. W. 370. In determining whether the employment is casual it is well also to consider the usual course of the employer's trade, business, or profession or occupation. If the employment is merely for some temporary or incidental matter apart from the usual course of the employer's trade or business, the employment therein would naturally partake of a temporary or casual character. Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426.

In this case relator was a farmer, and as far as farming operations were concerned persons employed therein were not covered by the compensation act. To be sure, relator could not support himself and family from the annual crops of his farm, there being only 12 acres under cultivation. But one starting as a farmer in a densely timbered country is nevertheless entitled to be regarded as a farmer even if at first he can obtain little by way of annual crops. He must have a home and buildings for domestic animals, and making use of the timber on the land for this purpose must be considered part of farming. So also must be the clearing of the land of timber. If the timber to be cleared off is sawed into lumber or cut into cordwood, and the surplus not needed for use. or for the improvement of the farm is sold, no one would say that the small farmer in the timbered country was departing at all from the occupation of farmer. The preparation of the surplus for sale and marketing the same would be but an incident of farming. Nor would we say that even the prairie farmer in times past who bought timber stumpage for the purpose of supplying himself with fuel thereby entered into any other trade or business than farming. Necessity compels the small farmer who settles upon a timbered tract of land to resort to various expedients to subsist and develop the farm. Keeping the turkeys, chickens, and cows which relator did was surely a part of his farming operations. True, a farmer can embark in some other business or vocation as in Klein v. McCleary, 154 Minn. 498, 192 N. W. 106; Benoy v. Torkelson, 161 Minn. 223, 201 N. W. 312; Durrin v. Meehl, 163 Minn. 325, 204 N. W. 22. But it must be of some magnitude and not a mere temporary incident of farming. It may be claimed that relator was in the summer resort business. It does not appear how the two cottages were used. Relator catered to fishermen, having 14 boats for rent. But the evidence does not support a finding that respondent was in any employment growing out of keeping the so-called summer resort. The real contention on the trial and here is that relator went into the business of cutting and selling wood. To magnify the incident that relator, in providing his own fuel acquired a trifle too much timber stumpage, whereby he obtained some

80 cords more than immediately necessary, into an inference that he embarked in the fuel business appears to us unwarranted. This surplus he turned over to his son, who had loaned him some money to carry on the farm. To us these 80 cords of wood appear a mere incident to his farming—it started no new trade, business, or calling and was not intended to. It comes within such incidental undertakings as failed to bring an employment therein within the usual course of relator's trade, business, or occupation in Ostlie v. H. F. Dirks & Son, 189 Minn. 34, 248 N. W. 283, and Houser v. Osman Temple, 189 Minn. 239, 248 N. W. 827. The compensation act expressly excludes the farmer and farm laborers. It was intended to cover other trades, businesses, professions, and occupations. It is impossible to picture this small farmer as venturing into the wood business because of the fact that, not being able to get out enough wood for his own needs, he bought $20 worth of timber stumpage of a neighbor and thus obtained a little more wood than needed for the season. The employment cannot be allocated to the summer resort business, even if that can be severed from relator's farming operations.

The award and decision is vacated and set aside.

*DEVANEY, Chief Justice* (dissenting).

I dissent. In my opinion respondent was not a farm laborer within the contemplation of the statute (1 Mason Minn. St. 1927, § 4268), nor was the work at which he was engaged at the time of the accident incidental to that of farming. Hence I think the act should apply and that the order of the commission allowing compensation should be affirmed.

*DIBELL, Justice* (dissenting).

I concur in the dissent of the Chief Justice.