## CLARA OBERG v. ARTHUR J. DuBEAU AND OTHERS.[1]

April 14, 1938.

No. 31,531.

*Dell & Dell* and *Dell & Rosengren,* for relators.

*Murphy, Johanson & Winter* and *S. H. Buttz,* for Clara Oberg, respondent.

PETERSON, JUSTICE.

For some years before the accident respondent and her husband lived in a basement apartment of a hotel at the Geneva Beach Resort. This resort, prior to 1935, was owned and operated by relator Arthur J. DuBeau. In 1931 DuBeau hired Oberg to work at the resort as caretaker and handy man for one year, in return for living

[1]Reported in 279 N. W. 221.

quarters, board, light, heat, telephone, and $50 per month during the summer months when the resort was open to the public. In the winter Oberg and his wife were to stay at the resort and look after the property, for which they were to receive living quarters, heat, light, and telephone. The DuBeaus owned and operated another resort near by, the Blake Hotel, and when called upon to do so, Oberg was to assist the caretaker of the Blake Hotel prepare wood and ice for use at the resorts during the following season. For this additional work in the winter Oberg was paid one dollar per day. This arrangement continued from 1931 until March 27, 1936, but in 1935 a change was effected in the ownership of the Geneva Beach property. That year Arthur DuBeau conveyed the premises to a third party, who, in turn, conveyed to relator Ila DuBeau, Arthur's wife, so that at the time of the accident, title to the real estate was in Mrs. DuBeau's name and Mr. DuBeau owned the furniture and equipment. Mr. DuBeau was the active proprietor although Mrs. DuBeau did take some part in the management. Proceeds from the resort went into a Geneva Beach bank account, and from this fund disbursements were made for all expenses in connection with the resort, including taxes and mortgage interest on the real estate. In 1935 a farm, located about 23 miles from the Geneva Beach Resort, was purchased in Mrs. DuBeau's name and was managed by Mr. DuBeau. The day before the accident, Oberg, under instructions from Mr. DuBeau, worked at this farm with the caretaker of the Blake Hotel. The two caretakers hauled lumber to the farm from Alexandria, to be used in installing stanchions in the barn. They did not finish their work that day and were to continue the following day. Early on the morning of March 27 DuBeau called Oberg at Geneva Beach by telephone and asked him if he was going to the farm as planned. Oberg replied that he was just leaving, and shortly thereafter he drove from the resort in his automobile. The road from the resort joined a public road after a short distance, and the public road crossed railroad tracks near the point where the resort and public roads joined. When Oberg was crossing these tracks a train collided with his car and he was killed.

■ It is urged that Oberg's death did not result from injuries

arising out of and in the course of his employment. The contention is that Oberg was employed solely by Arthur DuBeau at the Geneva Beach Hotel; that he had left his employment and residence to go to the Blake Hotel, from which he and Allen, the caretaker at the Blake, were to go to Mrs. DuBeau's farm, where Oberg's work was to be done, and that he was not in her employ while en route and before he arrived at her farm. The finding of the commission is that Oberg was at the time in the employ of both Mr. and Mrs. DuBeau. Our only inquiry is whether the finding is sustained by any evidence. The legal title to the Geneva Beach Hotel and the farm was in Mrs. DuBeau. But that fact in itself is not controlling. The DuBeaus had been in the hotel business together for over 25 years. They were in the business not only at the Blake Hotel and the Geneva Beach but prior to acquiring them, and, although Mrs. DuBeau specifically denied any voice in the management, the testimony indicates that she was one of those operating the hotels, as, for example, her testimony that the manager worked "for us," and Mr. DuBeau's answer to the question: "You both have been active in the business?", that they "worked together more or less." There is other evidence that Mrs. DuBeau was active in the business. While it is claimed that Mr. DuBeau was the sole operator of the Geneva Beach, it was operated as though the wife had an interest in the business. Out of the gross receipts, the manager paid the taxes on the real estate, interest on the mortgage, and made disbursements for certain improvements and repairs. There is no evidence to explain or overcome the inference from the testimony referred to. Under the employment arrangement, Mrs. DuBeau could require Oberg to assist at the Blake Hotel just as the caretaker of the Blake Hotel was required to assist at the Geneva Beach. While Oberg was to receive one dollar per day for the work at the farm, it was in the nature of additional compensation because of its extra burdensome character. The Obergs were on duty for 24 hours per day the year round. The evidence justified a finding that the husband and wife together operated the resort business. Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632.

Oberg was expected to travel on the road across the railroad tracks not only on the day in question when he traveled it to go to the Blake Hotel, but on other occasions as well when going from and returning to the Geneva Beach Hotel. Crossing the railroad tracks was a necessary incident of his employment and exposed him to dangers peculiar to the employment not shared by the public generally who used the road only occasionally. In traveling across the railroad tracks on his way from the Geneva Beach to the Blake Hotel, Oberg was where his duties required his presence. The finding that he was at the time in the employment of Mr. and Mrs. DuBeau is sustained by the evidence. Reese v. National Surety Co. 162 Minn. 493, 203 N. W. 442; Ludwig v. Farmers Shipping Assn. 181 Minn. 90, 231 N. W. 803; Green v. County of Chippewa, 189 Minn. 627, 250 N. W. 679.

■ Oberg was not a farm laborer because he was on his way to the farm to work. The work which he was doing at the farm was not farm work. It consisted of repairs to the buildings. The DuBeaus did not operate the farm themselves but rented it to a tenant, and the purpose of the repairs was to put the premises in condition for renting. The whole character of Oberg's employment must be looked to to determine whether he was a farm laborer. Oberg at the time was employed as a caretaker of the hotel property at the Geneva Beach Hotel. The repairs which he was making at the farm were no different than those done by a mechanic sent for that purpose. A workman is not a farm laborer simply because at the moment he is doing work on a farm. Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124; Klein v. McCleary, 154 Minn. 498, 192 N. W. 106; Nygaard v. Throndson Bros. 173 Minn. 441, 217 N. W. 370.

■ It is claimed that Oberg's employment was casual and not in the usual course of business of the DuBeaus and hence that he was not within the operation of the workmen's compensation law. It is undisputed that Oberg was not a casual employe. His employment by the DuBeaus was steady and continuous. At the time of his death he had been in their employment for over five years. The workmen's compensation act, 1 Mason Minn. St. 1927, § 4268, *et seq.,*

excludes from its operation only those employes whose employment is both casual and not in the usual course of the trade, business, profession, or occupation of the employer. Since Oberg was not a casual employe, he was within the act. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636, and Nygaard v. Throndson Bros. *supra,* are not distinguishable from the case at bar.

The other points raised have been considered and found to be without merit.

Respondent is awarded attorney's fee in this court of $100.

Affirmed and writ discharged.