**FROMM BROS., Inc., v. UNITED STATES.**

No. 40.

District Court, W. D. Wisconsin.

Oct. 18, 1940.

Bird, Smith, Okoneski & Puchner, of Wausau, Wis., and Brewster & Steiwer, of Washington, D. C., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Thomas G. Carney, Sp. Assts. to Atty. Gen., and John J. Boyle, U. S. Atty., and Alvin M. Loverud, Asst. U. S. Atty., both of Madison, Wis., for defendant.

STONE, District Judge.

Plaintiff in this action seeks to recover from the United States a refund of social security taxes it paid for the years of 1936 and 1937. It contends that during those years it was engaged in agricultural labor and was exempt from the tax.

Prior to its amendment on August 10, 1939, the Social Security Act did not specifically, word for word, include as agricultural labor services performed in connection with raising fur bearing animals. The statute, as now amended, includes as "agricultural labor" services performed in connection with raising, feeding and caring for live stock and fur bearing animals and wild life. 42 U.S.C.A. § 409.

The issues herein must be determined under the provisions of the statute before its amendment.

The question before the Court is whether or not the services rendered to the plaintiff by its employees in connection with the raising and selling of foxes and fox pelts, constitutes agricultural labor within the meaning of the Social Security Act. The total amount of the taxes, penalty and interest paid by the plaintiff for the years 1936 and 1937 is $2,514.92. Plaintiff failed to file a return for those years. The Collector of Internal Revenue prepared delinquent returns for the company and assessed taxes based thereon, and thereafter, on September 28, 1938, plaintiff filed returns under Title VIII, 42 U.S.C.A. § 1001 et seq., for 1936, and under Title IX, 42 U.S.

C.A. § 1101 et seq., for 1936–1937, disclosing taxes due to the Government in the amounts of $827.17, $48.47, and $1,057.85, respectively. The assessment made on the basis of the returns prepared by the Collector's office exceeded these amounts. The excess was abated, and payment of the tax, penalty and interest was made by the plaintiff. Plaintiff then filed claims for refund for the amount it paid, and based its claims on the ground that the taxes were imposed with respect to wages paid for services rendered in the breeding, raising, pelting and sale of foxes and pelts, and that such labor constituted agricultural labor within the meaning of the Act and was therefore exempt. The Commissioner of Internal Revenue rejected plaintiff's claim for refund, holding that such services were not agricultural.

In 1936 and 1937 plaintiff owned, and now owns, 10,000 acres of land in Marathon County, Wisconsin, about 400 acres of which are under cultivation. Of the 400 acres, 80 acres are devoted to ginseng, and the remainder thereof to growing grain, corn, hay and some vegetables. About 480 acres are used for fox pens, and about 1,380 acres are used for fox ranges. The remainder of the 10,000 acres is cut-over woodland.

Plaintiff breeds, ranges and feeds silver foxes of its own, and also ranges, feeds and pelts foxes for "Fromm Brothers, Niemann and Company", "Federal Silver Fox Farms", and "Fromm Silver Cross Fox Farms". The amount of stock owned by the plaintiff and by its officers and stockholders in these three corporations exceeds 50% of the issued and outstanding capital stock of the corporations.

Plaintiff raised and pelted about 5,000 foxes of its own during 1936 and about 7,000 during 1937. In 1936 it ranged and pelted about 8,000 foxes for the controlled corporations, and about 8,000 in 1937. The controlled corporations were charged for these services. Plaintiff also ranged, fed and pelted foxes belonging to other corporations in which it was not financially interested.

Plaintiff conducts auction sales of furs and pelts on its property. At these sales it offers its own furs and the furs of foxes ranged and pelted by it for other corporations, and furs shipped in by independent breeders of fur bearing animals. It conducts these sales in the same manner and offers the same services with respect there-to as ordinary commercial fur auction houses. It charges a commission of from three to four per cent on the sale of furs or pelts sold. It charges shippers for the drumming—that is, the cleaning of the pelts. It loans money to shippers on unsold pelts and furs on the security of such pelts and charges interest on the loans. In the year of 1936 it sold at these auctions 5,000 of its own pelts and 8,000 pelts for controlled corporations. In 1937 it sold 7,000 of its own pelts, 8,000 pelts for controlled corporations, and about 9,000 for independent shippers.

The plaintiff employs men and women in carrying on the foregoing activities, the number varying from season to season and from year to year. The employees are employed and paid by the day. Rates of pay vary with the types of the services, but generally are comparable to farm wages in the locality where plaintiff's property is situated. Each of the officers of the plaintiff receives a salary of $10,000 per year.

In addition to about sixty or seventy women employees, the plaintiff, in 1936, employed 193 men; in 1937, 272 men. The women are employed principally in the ginseng gardens, but from three to five are continuously employed as cooks. From five to twelve night watchmen are employed throughout the year, and the company has advertised that it employs as many as thirty-five.

Plaintiff employs two veterinarians, one of whom also acts as a contact man and solicits independent fur growers to send their pelts to plaintiff's auctions for sale. It employs a man who is engaged solely in research work in bacteriology and immunology. It also employs a salesman with an office in New York City.

The average sale price for a pelt in the years 1936 and 1937 was not disclosed by the testimony, but it does appear that the average sale price of pelts sold for others in 1939 was $36.74; that 25,000 pelts were sold at 3% commission, which yielded $27,555 that year as commissions for the sale of other pelts.

■ Foxes in their natural state are wild animals. Plaintiff's foxes were bred from captive foxes, were domesticated, and have never been permitted to leave the enclosure of the fox farms. The growing of silver foxes is a permanent addition to agricultural development, and has been

so recognized by the United States Department of Agriculture, the Farm Credit Administration and other Governmental agencies. Live stock includes fur bearing animals domesticated, and raised in captivity. The breeding, raising and pelting of foxes is agricultural labor within the meaning of the term as used in the Social Security Act, and live stock includes fur bearing animals raised in captivity.

Agriculture has been defined in Webster's International Dictionary as the art or science of cultivating the ground and raising and harvesting crops, often including also feeding, breeding and management of live stock, tillage, husbandry, farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and for disposition by marketing or otherwise. In this broader sense it includes farming, horticulture, forestry, dairying, sugar making, etc.

The services rendered by plaintiff's employees in connection with the breeding, raising and pelting of foxes was agricultural labor within the meaning of the provisions of the Social Security Act.

In Minister of Labor v. Stephens, et al., [1938] 2 K.B. 675, a well-considered English case in which the issue was whether one who was employed on a fur farm was engaged in agricultural labor within the meaning of the Unemployment Insurance (agricultural) Act of 1936, the Court said:

"They (employees on fur farms), it appears, are paid according to agricultural wages. They live the lives of agricultural workers. It is true that they are employed in feeding, watering and cleaning foxes, but unless it is to be said that agriculture is stereotyped and that no animal which has been introduced within the memory of man can properly be treated as the subject of agriculture in the sense that it is livestock which is raised upon a farm, partly by the produce of the farm and partly by having the land to walk upon, I can see no distinction to be drawn between these foxes and sheep, which, of course, may be grown for mutton or for their fleece, and I suppose one might imagine that some sheep may be grown rather for the one reason than for the other. I think it is impossible to say that no animal can be the subject of agriculture when it is being raised upon the land by the produce of the land, unless its flesh is used for human consumption, and that seems to me to be the only real way in which one could distinguish foxes, or mink, from other things, such as pigs or cattle, which are undoubtedly livestock in the ordinary sense of the word, and the raising of which, feeding of which, and the tending of which would obviously be regarded by everybody, so long as it is done in the ordinary way upon a farm, as an agricultural pursuit. * * * My view is that where one has, as in these cases, a plot of land in the country being used for the raising of livestock in the shape of fur bearing animals, and, at the same time, being used to some not inconsiderable extent for the production of food for those animals, persons employed in relation to the feeding of those animals and in relation to the raising of food for them are persons employed in agriculture and therefore entitled from the time at which the Act came into operation to be insured at the rates provided by the Act of 1936."

The recent case of United States v. Turner Turpentine Co. et al., 5 Cir., 111 F.2d 400, 405, involved a question similar to the one before this Court. The claimants were owners and operators of a Georgia turpentine farm, and, under protest, paid taxes under the Social Security Act, and thereafter brought suit for their refund. The District Court found that the employees were engaged in the production of gum by the scarification of living pine trees, and its processing into gum spirits of turpentine and gum rosin. That in such employment they were engaged in agricultural labor, within the exception of Section 811 of the Act, U.S.C. Title 42, 42 U.S.C.A. § 1011, and the taxes had been wrongfully exacted and must be refunded. In the opinion affirming the District Court, the Court of Appeals said: "'Agriculture' is an indefinite word, including in broad sense, farming, horticulture and forestry, together with such subjects as butter, cheese and sugar making, and words, 'agricultural purposes', have generally been given such comprehensive meaning, unless restricted by context of statute in which used. * * * the term 'agriculture' is broader in meaning than farming."

■ The taxes are imposed upon the income represented by wages and are measured by wages paid in employment. The test of whether or not the taxes are

due is ordinarily governed by the nature of the services rendered to the employer.

 From the record and on the tax returns made by plaintiff, it is impossible to segregate the wages of any particular employee, and determine what part of his services were devoted strictly to agricultural work. Plaintiff had in its employ many individuals who were rendering services which were not exempt. It has failed to identify by competent evidence who the particular individuals were whose wages went into the computation of the tax, the nature of the services rendered by those particular employees, and the amount of the tax collected with respect to those wages. Many of the employees were admittedly engaged in agricultural work, but plaintiff has failed to prove who they were and what time they actually devoted to the farm work which carried exemption from the tax.

The plaintiff's operations with respect to raising fur bearing animals and marketing of furs goes to some extent beyond the concept of agricultural enterprise, since plaintiff holds itself out to be equipped to and does render services of a commercial nature and in competition with other auction houses. Some of the services rendered by employees of plaintiff are not agricultural. The commercial aspect of plaintiff's operations is evidenced from its corporate affiliations, salaries paid to its officers and principal employees, research men, armed guards, sales representative in New York office, and its nation wide advertising.

The foxes raised by the plaintiff in 1936 and 1937 represent but one-third of the foxes it ranged and pelted, and less than one-fifth of the fox pelts it sold.

The testimony is conflicting as to whether the witness, Gruett, the plaintiff's bookkeeper, Edward Fromm, the president of the plaintiff, or a firm of attorneys employed by the plaintiff had prepared the returns which were signed by Edward and John Fromm, but it is clear from the evidence that the plaintiff was engaged partially in a commercial and partially in an agricultural enterprise.

Inasmuch as the plaintiff has failed to disclose just what wages with respect to services of an agricultural nature, if any, have been included in the computation of the taxes sought to be recovered, the Court cannot, in the present state of the record, enter judgment for a refund of the taxes paid.

 There seemed to be some justification for plaintiff's failure to file the return within the time fixed by the statute, inasmuch as it had been advised by its counsel that it was exempt from the provisions of the Social Security Act. The Commissioner's assessment and collection of penalties for delinquency and for alleged wilful failure to file the returns was unwarranted.

Plaintiff is entitled to a refund of the penalty paid on the tax, in the sum of four hundred eighty-three and 37/100 dollars ($483.37), but is not entitled to a refund of the tax and interest paid thereon.

Let judgment be entered accordingly.