### FRANK ARTHUR PARTRIDGE v. RAY BLACKBIRD.[1]

November 13, 1942.

No. 33,277.

*Clarence C. Mitchell* and *William R. Mitchell,* for relator.
*R. G. Shepley,* for respondent.

[1]Reported in 6 N. W. (2d) 250.

Loring, Justice.

*Certiorari* to review an award of compensation by the industrial commission to Frank Arthur Partridge against his employer, Ray Blackbird, who owns and lives upon an 80-acre tract in Isanti county.

The principal question presented by the writ is whether or not Partridge was a "farm laborer" within the exemptions to the application of the compensation act.

In addition to his 80-acre tract, about half of which was under cultivation, Blackbird rents several hundred acres of land, part of which he has under cultivation. He also pastures about 20 head of cattle which he owns. In 1940, the year in which Partridge was hurt, Blackbird had a total of about 260 acres in grain and some 210 acres in corn. In his farming operations he has and uses plows, harrows, disks, a grain drill, corn planters, a truck, combine, and a corn picker, as well as a tractor. He did not have a thresher other than the combine, nor did he have a corn shredder, corn sheller, or hay baler. He sometimes hired Partridge and sometimes a man named Trikle to operate the combine or corn picker. Apparently he hired one when he could not get the other, for it does not appear that they worked at the same time.

Blackbird did some work with the corn picker and combine for other farmers in his vicinity, although it does not appear that in 1940 he did any combining for other farmers. He did this work by the acre, sometimes receiving cash and sometimes exchange of work, as was the case when Partridge was operating the corn picker at the time he was hurt in October 1940. These outside jobs which he did for other farmers were apparently small jobs. One of them was for three and one-half acres, one for seven acres, one for 13 acres, and as a rule they took but a few hours to finish. On the Lundeen place, where the accident occurred, they had worked about two hours, and there were still about 13 or 14 acres left to pick. The corn picker and tractor can be operated by one man.

While Partridge was working for Blackbird he operated the various pieces of farm machinery such as the combine, the disk, and the corn picker, for which he was paid by the hour. He did not do chores such as milking. He was Blackbird's brother-in-law and lived not far from Blackbird's farm. He worked somewhat intermittently as the demands of the farming season required. He had done some farm work for Blackbird during the summer but did not work during the month of September. He commenced. work again about October 1 with the corn picker and had picked on three other places before going to work on the Lundeen farm, where he was hurt. He went to work there at about 11 a. m. and the accident happened about 2:30 p. m.

Whether an employe comes within the exceptions to the application of the compensation act as prescribed by Minn. St. 1941, § 176.05 (Mason St. 1940 Supp. § 4272-4), is determined by the whole character of the employment. Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124. As said in Hebranson v. Fairmont Creamery, 187 Minn. 260, 262, 245 N. W. 138, 139: "the nature of the employment is the test rather than the particular item of work he is doing when injured." In Oberg v. DuBeau, 202 Minn. 476, 479, 279 N. W. 221, 223, we said: "The whole character of Oberg's employment must be looked to to determine whether he was a farm laborer." In determining whether or not an employe was a domestic servant, this court in Anderson v. Ueland, 197 Minn. 518, 523, 267 N. W. 517, 519, 927, said: "The test is the nature of the employment and its relation to the home."

Applying the test announced in the foregoing cases to the facts in this case, we hold that the evidence compels a finding that Partridge was a farm laborer and that Blackbird was not engaged in an independent commercial enterprise or business. In operating his rather extensive acreage, Blackbird had the necessary equipment for so doing, whereas his neighbors and other farmers in his vicinity, with perhaps less acreage, naturally sought to hire work done with labor-saving machinery which they did not possess. Sometimes they paid cash for such service and sometimes paid in

exchange of work. Certainly these incidental jobs did not constitute a commercial enterprise. It is the policy of the legislature to exempt farm labor from the compensation act. We should not go contrary to that policy by interpreting into the act exceptions that are not there. The legislature in Minn. St. 1941, § 176.01, subd. 13 (Mason St. 1927, § 4326[m]), defined the exceptions from the exemption of farm laborers, and none of them applies to the case at bar.

The decision of the commission is reversed and the award annulled.