# ROBERT TUCKER v. CLAUDE A. NEWMAN.[1]

May 26, 1944.

No. 33,768.

*C. U. Landrum* and *D. N. Lindeman,* for relator.
*DeLury & Peterson,* for respondent.

YOUNGDAHL, JUSTICE.

*Certiorari* to review a decision of the industrial commission affirming a referee's award of compensation to respondent for accidental injuries sustained while in relator's employ in the operation

[1]Reported in 14 N. W. (2d) 767.

of a grinder used in the preparation of food for foxes and mink raised by relator.

Relator owned approximately 640 acres of land, 70 of which were under cultivation and the remainder in pasture. About three acres were used for pens for the foxes and mink. He also kept 50 head of cattle, some milch cows and young stock, four horses, and about 200 sheep, together with farming tools and equipment. When respondent was employed there was no definite agreement as to the duration of his employment, and there is disagreement now between the parties as to the duties he was to perform. Relator contends that he employed respondent to repair the farm buildings and dig a basement, and that apart from occasionally watering the mink he had no duties with reference to their care. Respondent insists that his principal employment consisted in helping to feed, water, generally care for, and finally assist in the pelting of the animals; that on the day of his injury he was directed to "go down and get ready to start grinding" the horse meat for their food; that he started the grinding machine, caught his left hand in the machine, and suffered the loss of four fingers. Relator denies giving such an order and insists that he cautioned respondent to stay away from the machine.

On this appeal, relator contends that respondent's employment was that of a farm laborer and that any duties he performed in connection with the care of the foxes and mink were incidental and did not operate to change the character of such employment; that relator's fox and mink business was an undivided part of his general farming operations and, as such, came within the exemptions of the workmen's compensation act; that, in any event, respondent disobeyed instructions and at the time of his injury was outside the sphere of his employment and forfeited any benefits to which he might otherwise have been entitled under the act.

■ Relator strongly urges that respondent was employed as a farm laborer to repair farm buildings, and, while occasionally he may have directed respondent to water the mink, that whatever work respondent did in connection with the raising of mink and

foxes was incidental and did not operate to change the general character of his employment as a farm laborer. He asserts further that the fact that he was injured while grinding food for the animals was not significant in determining the character of his employment. Neither the task on which a workman is engaged at the time of injury nor the place where it is being performed is determinative of whether he is a farm laborer. Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124; Schroepfer v. Hudson, 214 Minn. 17, 7 N. W. (2d) 336. Whether an employe is covered by the act is determined by the whole character of his employment. Partridge v. Blackbird, 213 Minn. 228, 6 N. W. (2d) 250. Respondent testified that his work was connected principally with the fur farm and that "the crop was all farmed when I started there"; that during the six weeks he was employed before his injury he spent about one week digging a basement and laying the foundation for a cold storage unit to be used for the preservation of horse meat for the animals and another 10 or 12 days shingling a kitchenette on the farm residence and helping relator's son-in-law with some building repairs; that during the remainder of the time his work was confined to taking care of the foxes and mink. When asked, "And how long would it take to feed the foxes?" he replied: "Just takes most of the forenoon anyway—probably four or five hours." And further, "And what did you do during the afternoon then?" to which he replied: "About that time we started pelting; we would go out and kill the mink for pelting, and then we would clean cages and change the bedding around." Respondent testified that he had been assisting with the pelting for a week or two before his injury. He stated that he helped feed the cows three or four times and assisted one Jensen around the barn. Relator insists that the carpentry work done by respondent, plus the fact that he had on occasion helped with the barn work, is evidence that the character of his work was that of a farm laborer. It does not follow, because respondent intermittently did some work outside of his principal work on the fur farm, that such occasional duties operated to change the character of his employment. "A workman is not a farm laborer simply be-

cause at the moment he is doing work on a farm." Oberg v. DuBeau, 202 Minn. 476, 479, 279 N. W. 221, 223. There are some kinds of work performed on a farm which, in the ordinary course of things, might be performed by either a mechanic employed in an occupation or trade within the act or by a farm laborer as a part of the work ordinarily done about a farm. Schroepfer v. Hudson and Peterson v. Farmers State Bank, *supra;* 1 Schneider, Workmen's Compensation Law (2 ed.) §§ 31-32. In the Schroepfer case, we cited with approval the following statement from the Peterson case (214 Minn. 21, 7 N. W. [2d] 338):

"So also a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one."

Therefore, if respondent was employed principally to assist in the fox and mink business and that was the main character of his employment, he did not "step out of character" by doing the incidental work on the farm itself or the carpentry work on the farm buildings.

It may be conceded that testimony adduced in behalf of relator would have justified a finding that respondent was employed as a laborer on the farm and spent the greater part of his time in connection with that employment. However, there was testimony in direct conflict with this contention justifying the determination of the commission as stated in its memorandum:

"* * * Here the employe spent the greater portion of his time in furthering his employer's interests in the operation of the 'fur farm' and was injured while working in this business enterprise."

Whether respondent was employed as a farm laborer or as a laborer in the fox and mink business was a fact question for the commission to determine. Schroepfer v. Hudson, 214 Minn. 17, 7 N. W. (2d) 336, *supra.* Upon conflicting testimony, findings of fact by the commission reasonably supported by the evidence are conclusive

on review. Hill v. Umbehocker, 201 Minn. 569, 277 N. W. 9; Schroepfer v. Hudson, *supra*.

■ Having reached the conclusion that the evidence sustains the finding of the commission that respondent was employed primarily as a workman in connection with relator's business of raising foxes and mink, we come to a consideration of whether such activity constituted farming within the meaning of the workmen's compensation act, Minn. St. 1941, § 176.05 (Mason St. 1940 Supp. § 4272-4), so as to be exempt from the provisions thereof.

In 1936, relator brought his foundation stock of 50 breeders of foxes and mink from Canada to his farm near Detroit Lakes. Since that date his stock has increased to the extent that in the 1941 season he raised between 900 and 1,000 animals. It appears that relator's two sons and all three of his employes, except Martin Jensen, devoted their full time to the care of the animals either by way of watering, feeding, or cleaning their cages, or preparing their food, and, finally, pelting. One Glenn Sander, a part-time employe, also devoted his time to their general care. Jensen was engaged primarily to take care of the barn and farm stock. None of the food for the foxes and mink was produced upon relator's farm. It appears that from a modest beginning he had increased his business to a sizable proportion, that he had acquired the necessary machinery for grinding the food, and was making plans to build a cold storage plant in connection with that business.

Relator calls attention to the amount of farm machinery and the number of cows, sheep, and horses on his farm in support of his contention that he was engaged in farming. It may be conceded that he was extensively engaged in farming, but it also appears that, in addition to farming, relator carried on a separate and distinct business in raising foxes and mink. The rule is settled that:

"A person may engage in different kinds of business, some of which are within the workmen's compensation act and some of which are not. The employes who are employed in business within the act are, in virtue of such employment, within the coverage of

the act. By the same token, those who are employed in a business not within the act are not covered." Schroepfer v. Hudson, 214 Minn. 19, 7 N. W. (2d) 337, *supra.*

To the same effect are Hebranson v. Fairmont Creamery, 187 Minn. 260, 245 N. W. 138; Greischar v. St. Mary's College, 176 Minn. 100, 222 N. W. 525. Work may be farm labor if associated with farm activity, but if carried on as a commercial enterprise it is subject to the workmen's compensation act. Hagelstad v. Usiak, 190 Minn. 513, 252 N. W. 430. Here, raising mink and foxes was not a mere incident to the farming operations, but was a substantial, commercial enterprise, separate and distinct from the farming activity.

Relator quotes from and relies upon Minn. St. 1941, § 268.04, subd. 12(6)(a)(1), (Mason St. 1941 Supp. § 4337-22K[6][a][1]), of the Minnesota employment and security act (commonly referred to as the unemployment compensation act), enumerating certain activities, one of which is the raising of fur-bearing animals, which he claims is included within the term "agricultural labor" as used therein; and § 268.04, subd. 12(6)(a)(4), (§ 4337-22K[6][a][4]), which provides: "As used in this subdivision, the term 'farm' includes * * * fur-bearing animals * * *." These two provisions are nearly identical with corresponding sections in the federal social security act, upon which the state act was patterned in order to insure federal approval and its subsequent contribution of funds and other benefits. Relator contends that, since the raising of fur-bearing animals is included within the term "agricultural labor" under the so-called unemployment compensation act, it should, with equal effect, be read into the workmen's compensation act, Minn. St. 1941, § 176.05 (Mason St. 1940 Supp. § 4272-4), and be included within the meaning of the term "farm laborers" as used therein. Thus, he suggests that respondent's activities in caring for and feeding the foxes and mink would fall within the exemptions of the workmen's compensation act.

A consideration of the legislative history of the pertinent provisions of the social security act above referred to and subsequent decisions interpreting them does not support such a contention.

In Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 279, 293 N. W. 619, 626, where we held that the term "agricultural labor" as used in the social security act and "farm labor" as used in the workmen's compensation act are practically synonymous, we said:

"The federal statute as originally enacted, and the state statutes which copied it, do not define the term 'agricultural labor.' The term 'agricultural labor' was not by any means a new one. The workmen's compensation acts of various states contained provisions excluding 'agricultural employments' and 'farm labor.' These terms have been used as practically synonymous."

We there also approved the generally accepted definition of "agricultural labor" or "farm labor."

"* * * The definition in Webster's International Dictionary that 'agriculture is the art or science of cultivating the ground, *especially in fields* or in large quantities, including the preservation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of live stock; tillage; husbandry; farming,' is generally accepted. The terms include all farm work and work incidental thereto. 1 Schneider, Workmen's Compensation Law (2 ed.) § 31."

The federal social security act was passed in 1935 (Act of August 14, 1935, c. 531, Title II, § 210[b][1], 49 Stat. 625, 42 USCA, § 409[b][1]); but, as stated above, it did not attempt to define "agricultural labor." This was not done until an amendment was added in 1939 (Act of August 10, 1939, c. 666, Title VI, § 614[*l*], 53 Stat. 1392, 26 USCA, § 1607[*l*]), which included, *inter alia,* within the term the raising of fur-bearing animals. The question then arose in our state, as well as others, as to the effect of the amendment; that is, whether it was solely one of definition and clarification of what was always intended within the term or whether it represented an intention by congress to change existing law. In the Christgau case, in deciding whether an employe working in a greenhouse (one of the activities covered by the 1939 amendment), under the conditions there stated, came within the purview of the

term "agricultural labor," the court answered this question (208 Minn. 283, 293 N. W. 628) :

"The argument is staked on the proposition that the amendment simply defined the term 'agricultural labor' as congress intended it in the 1935 act and that it did not change the law. * * * The amendment discloses an intention to continue the statute in part and to change it in part. There was not only clarification, but change of meaning."

This identical question arose in Cedarburg Fox Farms, Inc. v. Industrial Comm. 241 Wis. 604, 610, 6 N. W. (2d) 687, 690, with reference to labor employed in the raising of foxes. The Wisconsin legislature, as here, amended its unemployment compensation act so as to incorporate the 1939 federal amendment. In that case plaintiff contended that the term "agricultural labor" as used in their state statute contemplated the raising of fur-bearing animals, although Rule 10 laid down by the Wisconsin industrial commission was substantially the same as United States Treasury Department Regulation 90, art. 206, effective until the 1939 amendment, which provided that labor "on a farm" and a "farm" were to be defined as embracing "the farm in the ordinarily accepted sense," and that in the application of such definition the treasury department issued specific rulings holding that fur raising was not to be regarded as agricultural labor. The Wisconsin court reached a contrary conclusion, because (241 Wis. 613, 6 N. W. [2d] 691) "a careful examination of the legislation and its history leads us to say that so far as it relates to the present case it was expressly intended to change existing law from a date fixed in the future, and was not declaratory of the old law and operative retroactively." See, also, In Matter of Bridges, 287 N. Y. 782, 40 N. E. (2d) 648, and Krobitzsch v. Industrial Acc. Comm. 181 Cal. 541, 185 P. 396. In holding that the term "agricultural labor" as it appeared prior to the amendment did not include the raising of fur-bearing animals, the Wisconsin court gave consideration to the terms "agricultural labor" and "farm labor" as used in their customarily accepted sense. Ordinarily the terms connote the tilling of the soil, its

products, and the raising and caring for such domestic animals as are usually found in those surroundings. Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 293 N. W. 619, *supra*. We do not believe that it can, with reason, be said that those terms ordinarily comprehend the occupation of raising foxes and mink, not to mention such rare and exotic ones as a "worm, rattlesnake, crocodile, or even oyster farm." Cedarburg Fox Farms, Inc. v. Industrial Comm. 241 Wis. 610, 6 N. W. (2d) 690, *supra*. We have not overlooked the contrary holding in Fromm v. United States (D. C.) 35 F. Supp. 145, but believe the rule as laid down in the Cedarburg case the better one and more consistent with the holdings of our court.

Since the courts have interpreted the term "agricultural labor" as used in the original unemployment compensation act as not including the raising of fur-bearing animals, there is even less reason for attempting to read such an exemption into the provisions of the workmen's compensation act. While there are, no doubt, valid reasons for extending the provisions of the federal social security act, a salutary purpose of which was to bring relief and security to the unemployed, these reasons do not prevail in the same degree as a ground for extending the exemptions found in the workmen's compensation act, which has for its aim the protection of all persons engaged in any occupation entailing hazards or risks. The raising of fur-bearing animals on an extensive scale is a business requiring the use of machines and equipment in a way that is much akin to an industry. As the use of mechanical apparatus increases, the hazards and risks of injury to the employe increase proportionately. To determine that such employes are not within the act would be to acknowledge the existence of working conditions clearly hazardous to these employes and at the same time deny to them the benefits for which the act was primarily designed and enacted. Although it is the policy of the legislature to exempt farm labor from the workmen's compensation act, we should not extend that policy by such a broad interpretation of the term as to include independent and separate commercial enterprises clearly not intended to be

included within the meaning of "farm labor." Hebranson v. Fairmont Creamery, 187 Minn. 260, 245 N. W. 138, *supra*. It is conceivable that there may be instances where an employment activity in connection with the raising of fur-bearing animals is on such a small scale and under such conditions as to warrant a determination that it is merely incidental to farming and does not amount to a separate and distinct business apart from farming. Hagelstad v. Usiak, 190 Minn. 513, 252 N. W. 430, *supra*. Each case must be determined on its own facts. This, however, is not one of those situations. Having in mind the finding of the commission as to the whole character of respondent's employment, together with the fact that the extent of relator's business was such as to constitute a separate and distinct industry, we conclude that it was not within the exemptions of the workmen's compensation act so as to deprive respondent of its benefits.

■ Relator asserts that respondent violated an instruction limiting his sphere of employment and that therefore the accident did not arise out of and in the course of his employment. Violations of orders or directions do not always defeat compensation. Olson v. Robinson, Straus & Co. 168 Minn. 114, 210 N. W. 64. But when such violation takes the employe out of the sphere or scope of his employment it is fatal to his claim for compensation. Rautio v. International Harv. Co. 180 Minn. 400, 231 N. W. 214; Anderson v. Russell Miller Mill. Co. 196 Minn. 358, 267 N. W. 501; Prentice v. Twin City Wholesale Grocery, 202 Minn. 455, 278 N. W. 895. See, James v. Peterson, 211 Minn. 481, 1 N. W. (2d) 844, distinguishing the last cited cases. It is the claim of relator that respondent was prohibited from using the grinder and was warned to stay away from it on numerous occasions and that at the time of his injury he had placed himself outside the sphere of his employment. Respondent denied that such instructions had been given. Thus a fact question was presented, which the commission has determined adversely to relator.

We do not overlook the fact that relator had the benefit of the testimony of a witness in support of his contention that such in-

structions were given. Opposed to this was only the denial of respondent himself. The issue might have been decided the other way; but we cannot, as a court of review, weigh the evidence. Where there is conflict in the testimony, as here, the finding of the commission cannot be disturbed. Schroepfer v. Hudson, 214 Minn. 17, 7 N. W. (2d) 336, *supra*.

Respondent is allowed $100 attorneys' fees in this court.

Affirmed.