# DUANE C. NELSON v. HARDER ROYAL BREEDERS, INC. AND ANOTHER.

187 N. W. (2d) 634.

May 28, 1971—No. 42633.

*Joseph W. Parris,* for relator.

*John F. Corbey,* for respondent employer.

*Warren Spannaus,* Attorney General, *John M. Mason,* Solicitor General, and *Gary C. Reiter,* Special Assistant Attorney General, for respondent state treasurer.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

Certiorari to review an order of the Workmen's Compensation Commission denying compensation.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Harder Royal Breeders, Inc., is a family corporation in which Glen Harder and his wife are the only stockholders. The corporation operated a farm of approximately 400 acres, engaging in raising turkeys and egg production. It kept approximately 25,000 turkeys, which produced about 90,000 eggs per month during the laying cycle. The eggs were sold to a turkey hatchery in Rochester, Minnesota. All of the cultivated land was devoted to raising corn which was used to feed the turkeys.

Relator, Duane C. Nelson, was one of three employees of the corporation. He was furnished living quarters on the premises in addition to his salary. His work consisted primarily of caring for the turkeys—feeding them, maintaining their water supply, and gathering eggs and candling them. He moved turkeys from one building to another, culled out the sick birds, and delivered eggs by truck to the hatchery. He spent about 90 percent of his time working directly with the turkeys. About 10 percent of his time in the fall was spent plowing, driving a tractor, and hauling corn. The relator employee injured his back in moving a turkey nest from one location to another. The custodian of the special compensation fund was joined in this proceeding pursuant to Minn. St. 176.183, subd. 1, because the employer had no workmen's compensation policy on file with the Minnesota Compensation Rating Bureau and no self-insurance certificate.

The sole issue is whether the employee was a farm laborer and exempt under the workmen's compensation statute, Minn. St. 176.041, subd. 1. The compensation judge held that the employee at the time of his injury was employed by the corporation as a farm laborer. The employee appealed and the Workmen's Compensation Commission affirmed. Certiorari was then granted.

The scope of our review is limited. In MacNamara v. Jennie H. Boyd Trust, 287 Minn. 163, 166, 177 N. W. (2d) 398, 400, it is stated:

"The general rule as to the scope of review applicable to appeals from the determination of administrative boards is that the function of the supreme court is not to determine whether

on the facts the decision of the commission is correct or even preferable to another, but rather, and only, to determine whether it has sufficient basis of inference reasonably to be drawn from the facts. The rule is applicable to our review of a decision of the Workmen's Compensation Commission."

See, also, McDonald v. St. Paul Fire & Marine Ins. Co. 288 Minn. 452, 183 N. W. (2d) 276.

The facts in this case are not in dispute. Only inferences from undisputed facts are at issue.

The many Minnesota cases dealing with the exemption of farm laborers indicate broad guidelines for determining whether an employee is a farm laborer, but each case depends upon its own facts. Whether an employee comes within the exception to the application of the compensation act is determined by the whole character of the employment. The test is the nature of the employment, taken as a whole, rather than the particular item of work that the employee was doing when injured or the place where the work was performed. Partridge v. Blackbird, 213 Minn. 228, 6 N. W. (2d) 250; Steinmetz v. Klabunde, 261 Minn. 487, 113 N. W. (2d) 444; Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124.

The raising of turkeys is a well-recognized farming operation. The size of a particular operation is not significant. In Steinmetz v. Klabunde, *supra*, the employer operated 900 acres of land, devoting it primarily to grain farming. The employer had a complete line of modern farm machinery, including machinery necessary to chop corn and fill silos. The employee was hired to run the corn chopper. The employer had assisted nine farmers in filling their silos on an exchange labor basis. At the time of his injury, the employee was operating the corn chopper on a neighboring farm. The commission held that the employee was covered by workmen's compensation. This court reversed, holding that the employee was a farm laborer.

That the employer in the instant case did not process the turkeys or the eggs is a factor to be taken into consideration. In

Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N. W. (2d) 115, the employer operated a 6-acre tract, raising about 8,000 turkeys and some chickens. About one-half of the total crop was slaughtered and dressed in a building on his own premises. The employee was injured in the processing building. He was held to be a commercial employee and not a farm laborer.

An employer may be engaged in two distinct businesses, one farming and one industrial. In Hebranson v. Fairmont Creamery, 187 Minn. 260, 245 N. W. 138, the creamery was engaged in the dairy business, selling milk at retail and manufacturing butter. The creamery also owned a 220-acre farm on which it kept 2,000 turkeys, 2,700 hogs, and 60 milch cows. The employee was hired to work on the farm. It was held that the employer was engaged in the business of operating a dairy and in the business of farming. The employee's activities were confined to the farming operation and therefore he was held to be a farm laborer notwithstanding the fact that the milk from the farm was part of the dairy's supply of milk. See, also, Greischar v. St. Mary's College, 176 Minn. 100, 222 N. W. 525. In the instant case, there was only one operation—farming.

The case of Dept. of Labor & Industry v. McLain, 66 Wash. (2d) 54, 401 P. (2d) 211, involved a chicken farm. The employer owned the Dottie Lee Egg Farm, consisting of 22 acres. The land was devoted exclusively to a poultry and egg-raising business and was not cultivated. Normally, 10,000 to 12,000 laying hens were maintained at one time. The necessary feed was purchased. The hens after 2 years of age were butchered by third parties off the premises. It was held that the injured employee was not entitled to benefits under the industrial insurance act. The Washington statute provided benefits for occupations classified as hazardous. Agricultural pursuits were not so classified. The court held that the operation of the egg farm came within the definition of farming and constituted an agricultural pursuit. In that case there was no farming operation in the ordinary sense

of the word but notwithstanding this fact, the Washington court held that the employer's operation constituted farming. In the instant case we have a very substantial farming operation. Turkeys, like chickens, are domestic poultry.

Relator relies on a number of cases, all of which are distinguishable: Stahl v. Patrick, 206 Minn. 413, 288 N. W. 854 (employee injured while cutting wood—employed by retired farmers who had embarked on a distinct business of dealing in wood); Klein v. McCleary, 154 Minn. 498, 192 N. W. 106 (employee injured while clearing land on summer resort tract—land owned by farmer employer); Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428 (employee injured while en route between potato field and warehouse—hired by potato dealer to work in warehouse).

In Tucker v. Newman, 217 Minn. 473, 14 N. W. (2d) 767, an employee was injured while operating a grinder used in the preparation of food for the foxes and mink raised by the employer. The employer owned approximately 640 acres of land, 70 acres of which were under cultivation and the remainder in pasture. About 3 acres were used for the foxes and mink. He also kept some livestock and farm equipment. The employee spent the greater portion of his time in the operation of the fur farm. He furnished feed and water to the animals and also assisted in killing and pelting the animals. In that case the court said:

"* * * Ordinarily the terms [agricultural and farm laborer] connote the tilling of the soil, its products, and the raising and caring for such domestic animals as are usually found in those surroundings. * * * We do not believe that it can, with reason, be said that those terms ordinarily comprehend the occupation of raising foxes and mink * * *." 217 Minn. 480, 14 N. W. (2d) 772.

The court held that the fur farm was a separate and distinct industry from the farming operation. Farming generally includes the care of domestic animals and poultry, and foxes and mink

are classified as ferae naturae. See, 4 Am. Jur. (2d) Animals, § 2.

Modern farming on a large scale involves the same hazards as many industrial operations. If the employees on large-scale farms are to be covered by workmen's compensation, however, it must be done by the legislature.

Where the commission has drawn a reasonable and permissible inference from undisputed facts, we are bound by the determination of the commission. It has done so here, and the order of the commission must be affirmed.

Affirmed.