Gregory McEWEN, Respondent,

v.

STATE FARM MUTUAL INSURANCE, Appellant.

No. 48571.

Supreme Court of Minnesota.

May 4, 1979.

**844**

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow and Richard C. Hefte, Fergus Falls, for appellant.

Wurst & McDowell and Lawrence A. McDowell, Thief River Falls, for respondent.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiff sued his automobile insurer for loss due to damages that resulted from a 1-car accident. Defendant contended that the policy had expired and had not been reinstated as of the time of the accident. At trial the jury found in favor of the plaintiff and the defendant moved for a new trial or, in the alternative, for judgment notwithstanding the verdict. The motions were denied and the defendant appeals from the order denying his motions. We affirm.

Plaintiff Gregory McEwen was the named insured on an automobile policy issued for 6-month terms by defendant, State Farm Mutual Insurance. In late November or early December of 1975 Gregory received a notice from State Farm that the premium for the next 6-month period was due by December 13, the date on which his policy expired. Sometime after December 13, he received a notice that his insurance had expired but that it would be reinstated as of December 13 if payment were received within 10 days of December 13. The notice indicated that if payment were not received within that time he would be informed if a late payment would be accepted for reinstatement of the policy. State Farm's procedure on late payments was that if payment were received between 10 and 23 days after the due date, then the original premium date would be retained but a refund would be made for the period that the policy was out of force.

On December 24, Gregory told his father, Mr. Neil McEwen, that he had not paid his insurance bill. Mr. McEwen told his son that he would take care of it but that Gregory should not drive in the interim. On December 26, Mr. McEwen stopped at the office of the State Farm agent who handled Gregory's policy, and left a check dated December 26 to cover half the cost of a 6-month policy for his son. The agent forwarded the check to State Farm but did not inform the company that the December 26 check had been received beyond the 10-day period. Because State Farm does not rely on check dates, however, it reinstated coverage of Gregory's policy as of December 13, and made no refund for the period December 13 to December 26.

After the December 26 payment, several forms carrying a June 13, 1975, policy date were mailed to Gregory. Neither he nor his father remembers seeing any of them though Mr. McEwen did pay the remainder of his son's 6-month premium in response to

one of the forms. In May 1976, Gregory received a notice that his next insurance premium was due on June 13. Gregory believed that the policy date was incorrect, but he did not notify State Farm. On June 23 he wrote a check to make payment and left it for his father to mail to State Farm. Mr. McEwen gave the envelope to his secretary to mail on Friday, June 25. The exact date it was placed in the mail is uncertain, but because the envelope was postmarked June 27 and State Farm relies on postmarks, Gregory was denied coverage from June 13 to June 28. State Farm issued a refund to Gregory for that period and retained the June 13 policy date.

On June 26, 1976, Gregory was involved in an accident and his car suffered approximately $3,800 damage.

Gregory sued State Farm alleging that a new insurance contract was formed on or about December 27, 1975, which extended from December 27, 1975 to June 27, 1976, and if additional premiums were paid within 10 days of June 27, 1976, continuous coverage would be provided.

On this appeal State Farm first argues that there was insufficient evidence to take to the jury the question of whether or not a new policy date had been established.

State Farm relies on *Kohen v. Preferred Risk Mutual Ins. Co.*, 426 F.2d 781 (5 Cir. 1970). The factual situation in *Kohen* is distinguishable from this case, however. In *Kohen* the insurance policy was clear in establishing successive periods of 6 months, and notices sent to the insured indicated that late payment would reinstate the policy. Gregory's policy, on the other hand, called for succeeding periods of 6 months "as the required renewal premium is paid * * * on or before the expiration of the current policy period." In the present case the premium was not paid on or before the expiration of the policy period and notices sent to Gregory did not indicate that late payment would reinstate the policy.

■ By the terms of State Farm's contract, and consistent with notices it sent out, Gregory's insurance policy had terminated when payment was not received by December 23, 1975. Although payment by December 23, the end of the 10-day grace period, would have resulted in continuous coverage from December 13, it was not clear from the notices or from the contract whether or not a payment after December 23 would be accepted. Even if accepted, it was unclear whether State Farm would continue the same policy payment period and refund unearned premium for the lapse in coverage or whether there would be continuous coverage from December 13. Presumably if Gregory had been involved in an accident between December 13 and December 26, his father's check would not have been accepted and he would have had no coverage for that period. Yet, State Farm claims the right to either relate coverage back to the expiration date or to declare a lapse in accord with company procedure.[1] The procedure, however, was not in the insurance contract or the notices sent to Gregory McEwen, nor was there any evidence that it was known to the insured. Thus, no provisions of the original contract or the notices govern this situation.

■ State Farm argues that no subsequent insurance contract existed between Gregory and State Farm because silence is not consent. But both Gregory McEwen, through his father Neil McEwen, and State Farm may have assented to a contract by their actions, and when the issues are in

---

1. "Well, we reinstate policies in a number of ways upon payment of premium. The first one would be with continuous coverage if payment is made within ten days after due date. The second way would be with time out of force and we would issue a refund to the insured for the period in which there was no coverage if payment is definitely made between ten days and 23 days after due date. If payment is made between 23 days and 39 days after due date, we would issue a new policy, and if payment is made after 40 days, then we would return the money and ask that the agent be contacted to write a new policy." (T. 107–108 testimony of Edward Wasowicz, State Farm employee). It was also a matter of company policy to ignore check dates as evidence of payment date and rely on postmarks and notes from agents as to when payment was received. (T. 109–110).

doubt the existence and terms of a contract are questions for the factfinder. See *Bergstedt, Wahlberg, Bergquist Associates, Inc. v. Rothchild,* 302 Minn. 476, 225 N.W.2d 261 (1975); *Hughes v. Becker,* 260 Minn. 83, 108 N.W.2d 781 (1961); *Hartung v. Billmeier,* 243 Minn. 148, 66 N.W.2d 784 (1954).

 Whether a contract was formed or not, State Farm contends that its conduct did not imply consent to any changes in the policy dates of Gregory's insurance contract. But the very acceptance of a premium after the previous contract had expired could imply a new policy date.[2] And though State Farm used the previous policy period date in its subsequent correspondence with Gregory, its failure to reimburse him for the period in which he was not covered suggests, as Gregory believed, that this was an oversight.[3]

State Farm also argues that certain evidence was improperly excluded at trial. State Farm made an offer of proof that the insurance premiums of plaintiff's father had on two occasions been paid late and he had been sent a refund for policy out of force rather than being given a revised expiration date. The trial court sustained an objection to the evidence. Defendant argues that its evidence should have been admitted as relevant to Mr. McEwen's state of mind when he paid the December 26 premium and as impeachment of Mr. McEwen's statement that he didn't know that paying after the tenth day always maintained the same policy period.

Initially it should be noted that there is no indication in the record that Mr. McEwen paid his own premiums or was aware of his policy date or of any changes of the policy date.

Further, in presenting his case-in-chief, plaintiff attempted to get into evidence the fact that Mr. McEwen had paid the premium with the idea that the insurance would be effective as of December 26. This was objected to by defendant State Farm: "[T]here's no actual basis for that except in his own mind as far as I know, expressing an opinion, conclusion." The court sustained the objection and the answer was stricken from the record. This ruling was well within the court's discretion and was made at the request of State Farm who will not be heard to contend that Mr. McEwen's state of mind is now relevant.

As to admission of the evidence for the purpose of impeachment, the issue of Mr. McEwen's possible knowledge that reinstatement resulted in maintenance of the same policy period is collateral to the primary issue of whether or not a new policy date was created for Gregory McEwen by the payment of the premium. Thus, it is not subject to impeachment.

Affirmed.

2. "In connection with health and accident policies the prevailing rule seems to be that reinstatement has a prospective effect dating from the time of reinstatement. The theory underlying this rule is predicated, inter alia, on the view that reinstatement is, in effect, a renewal for another term, creating a new contract prospective in nature, and, as reinstated or renewed, the policy covers losses thereafter sustained. Equally persuasive to the courts is the knowledge that a retroactive dating would unjustly deprive the insured of insurance protection for which he has paid, and would have the effect of compelling the insured to pay for insurance throughout a period for which the insurer is admittedly not liable.

"Accordingly, the acceptance of overdue premiums after a default for nonpayment, has been held to entitle the insured to future coverage, thus precluding a retroactive application of the premium." Annotation, 167 A.L.R. 333, 340.

3. Even if the contract maintains the old policy date, it can be argued that it is unfair to allow State Farm to accept a late premium and backdate coverage on one occasion, and then refuse to do so on a similar occasion. The actions of State Farm in accepting a late payment might reasonably induce an insured to believe that late payments would be accepted in the future. This issue is not before us, however.