Roy Leonard **SCHROEDER**, dec'd, by Annette **SCHROEDER**, Respondent,

v.

**MURPHY MOTOR FREIGHT LINES, INC.**, self-insured, Relator.

No. C8–85–461.

Supreme Court of Minnesota.

Aug. 16, 1985.

Scott W. Stevenson, St. Paul, for relator.

Marlen O. Haugen, Wayzata, for respondent.

AMDAHL, Chief Justice.

Roy Leonard Schroeder, a Minnesota resident who was employed by Murphy Motor Freight Lines, Inc., as a truckdriver working out of Murphy's Roseville, Minnesota, terminal for many years, transferred to its Nashville terminal shortly before his death in a single-vehicle accident in Georgia. His widow, who had remained in Minnesota, filed a petition for dependency benefits in this state, and Murphy resisted this claim on the ground, among others, that the jurisdiction of the Minnesota Workers' Compensation Act does not extend to the claim. Based on findings discussed below, the compensation judge agreed and ordered the claim dismissed. On respondent's appeal, the Workers' Compensation Court of Appeals (WCCA) set aside these findings. Substituting contrary findings, it held that Minn.Stat. § 176.041 (1984) extended the coverage of our compensation laws to the claim. We reverse and remand for reinstatement of the compensation judge's finding that employee had made a transfer normally considered permanent prior to his death and for a determination that section 176.041, subd. 2, precludes the taking of jurisdiction over the claim.

Minn.Stat. § 176.041, subds. 2 and 3 (1984), provide for compensation when an employee hired within this state sustains compensable injury outside the state. They provide:

Subd. 2. If an employee who regularly performs the primary duties of his employment within this state, or who is hired within this state, receives an injury while outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury unless the transfer is normally considered to be permanent. If a resident of this state is transferred outside the territorial limits of the United States as an employee of a Minnesota employer, he shall be presumed to be temporarily employed outside of this state while so employed.

Subd. 3. If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside of this state, such injury shall be subject to the provisions of this chapter. If the employer's business is in Minnesota and the employee's residence is in Minnesota, employment outside of this state shall be considered temporary.

The compensation judge found both that employee had transferred permanently to Nashville shortly before his death and at that time was a resident of Tennessee. The WCCA set aside these findings and substituted contrary ones. That tribunal is of course constrained by the 1983 amendments concerning its appellate review function to affirm a compensation judge's findings unless they were not supported by substantial evidence in view of the entire record, *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984), and Murphy contends here that the WCCA erred in substituting its own findings because the compensation judge's findings did have the requisite evidentiary support. After reviewing the record we are compelled to agree that the compensation judge's finding that employee had made a transfer normally considered permanent has substantial support in the record.

The parties stipulated to the following facts: Employee was an over-the-road driver, with a seniority date with the employer at its Roseville, Minnesota, terminal of November 13, 1975. From that date to August 1, 1981, he worked out of the Roseville terminal, which was his so-called "road domicile." On August 1, 1981, he was placed on a layoff status because of poor business. He was a member of Local 120 of the Teamsters Union, and contractual relations between employee and Murphy

were in part controlled by the National Master Freight Agreement and Central States Area Over-the-Road Supplemental Agreement. Following layoff, employee obtained a withdrawal card from his local, which meant that he did not have to pay monthly dues while laid off but remained a member of the local.

In September 1981 Murphy decided to place some road drivers at its terminal in Nashville and, pursuant to the union contract, posted notices at other terminals stating that if a driver was willing to take a transfer to Nashville at his own expense, he should sign the bid posted. Employee signed, listing his seniority date, and his bid was accepted. About September 21, 1981, he drove his automobile to Nashville. He started driving on trips from Murphy's Nashville terminal on October 4, 1981, and died on October 20, 1981, while on a trip to Georgia.[1]

The parties also stipulated that Murphy maintains payroll records for all of its employees at its St. Paul, Minnesota, offices, but did not agree on whether the transfer to Nashville was "normally considered to be permanent." Evidence on the issue was in conflict.

Orville Kraus, the St. Paul Local's business agent, and William Breese, Murphy's vice president for labor relations, interpreted the Master Agreement as permitting employee to retain his seniority at the Roseville terminal for 3 years from the time he began working at the Nashville terminal and, if there was an opening in Minnesota, to decide within 2 weeks whether to return to this state. Kraus also said that employee had the right to decide to return to Minnesota within 30 days after beginning work in Tennessee and, if he had so decided, would still have retained his seniority in Minnesota. Kraus claimed that this right was derived from an "area agreement rider" to the Master Agreement, but

admitted that it was not provided in the Central States Area Over-The-Road Supplemental Agreement in effect from April 1, 1979, to March 31, 1982. Breese denied that employees transferring to Tennessee had a right to return within 30 days to their original terminals and testified that the transfer was a permanent one. He also said that grievance committee decisions in the Central States had specifically prohibited employees who transferred to another terminal from exercising a "30-day recall right or go back right." Both agreed that an employee transferring to a new terminal is required to affiliate with the local union in that terminal within 30 days after he begins working there. Employees are also required to live near enough to the terminal which is their "road domicile" so that they can reach it on 2 hours' notice.

Two other transferred drivers and the Nashville branch manager testified that it was their understanding that transfers to the terminal were permanent.

In reviewing this evidence the majority of the WCCA panel made the assumption that the union contract provided that employee "was allowed up to 30 days to decide if he would accept his change of location of work as permanent." Because that 30 days had not elapsed before his death, they reasoned that he could have returned to Minnesota and thus that there was not substantial evidence that he had made a transfer which is normally considered to be permanent. We cannot find justification in the record for this assumption. Instead, whether or not this employee had this "30-day recall right or go back right" was the subject of diametrically conflicting testimony.[2] In light of the record as a whole, we are required to conclude that there was clearly substantial evidence to support the compensation judge's finding that employee had made a transfer "normally con-

---

1. The cause of employee's death, and whether it was work-related, are in dispute, but were not issues in the present proceeding.

2. While it is true that employee retained his seniority at the Minnesota terminal for 3 years

and could have thus been entitled to return here if an opening arose and he chose to do so during that period, he had no assurance that an opening would occur and he nevertheless accepted the transfer.

sidered to be permanent." This being true, the finding must be reinstated and demands the determination that section 176.-041, subd. 2, does not extend the jurisdiction of our Workers' Compensation Act to respondent's claim.[3]

We reverse and remand for reinstatement of the compensation judge's finding that employee had made a transfer which is normally considered to be permanent, for a determination that Minn.Stat. § 176.041, subd. 2 (1984), does not extend the coverage of the Minnesota Workers' Compensation Act to respondent's claim, and for dismissal of the claim.

Reversed and remanded.

---

**3.** Consequently, we need not decide whether the compensation judge correctly found that employee's residence was in Minnesota at the time of his death. We note, however, that Minn.Stat. § 176.041, subd. 3 (1984), does not define "residence" and point out that the term has several possible meanings. *See Chapman v. Davis*, 233 Minn. 62, 66, 45 N.W.2d 822, 825 (1951).