Fred MEYERING, Relator,

v.

Marvin K. WESSELS, uninsured, State Treasurer, Custodian of the Special Compensation Fund, Respondents.

No. C3–85–1355.

Supreme Court of Minnesota.

March 21, 1986.

Michael D. LaFountaine, Fairmont, for relator.

Richard D. Berens, Fairmont, for Wessels.

Thomas G. Lockhart, St. Paul, for Custodian of Special Compensation Fund.

KELLEY, Justice.

When an employer operates a farm in Minnesota and one 200 miles away in Iowa, under the facts here existing, should cash wages paid to farm employees in a single year be aggregated in determining whether the "family farm" exclusion exempts the employer from providing workers' compensation coverage? The compensation judge ruled they should not. Her decision was affirmed by the Workers' Compensation Court of Appeals.

We reverse.

Fred Meyering, a farm worker on a Minnesota farm operated by Marvin Wessels, sustained a work-related injury resulting in permanent partial disability of his left hand.[1] His workers' compensation claim was rejected by the compensation judge who determined that it was excluded by Minn.Stat. §§ 176.041, subd. 1, and 176.011, subd. 11a (1984).[2] The Workers' Compensation Court of Appeals affirmed. At issue is whether Minn.Stat. § 176.011, subd. 11a was correctly construed.

Meyering was a resident of Iowa. When he worked for Wessels, more than 98 percent of his time was spent working on a farm owned and operated by the Wessels family in Minnesota. That family also owned and operated a farm 200 miles away in Iowa. All members of the Wessels family operating the farms lived on or near the Iowa farm. No member of the family lived on or near the Minnesota farm, nor was there even an occupied residential building on the Minnesota farm. Each farm had its separate complement of farm machinery. Tractors, planters, and cultivators used on the Minnesota farm were stored near or in buildings on the Minnesota farm. One exception involved a harvesting combine which was used on both farms. The Minnesota farm was a soybean and corn cash crop operation. No livestock was raised there.

In 1981, Wessels paid cash wages totaling less than $8,000 to employees working on the Minnesota farm. In the same year, Wessels paid almost $10,000 cash wages to employees working on the Iowa farm. Separate books were kept for each farm, and separate schedules for the expenses of each farm's operation were attached to Schedule F of Wessels' federal income tax return.

The Minnesota compensation judge held that the employer's Minnesota farm operation fell into the statutory category of "family farm" because cash wages paid to employees working on that farm in 1981 were less than $8,000. The judge ruled so, notwithstanding that if cash wages paid on the Iowa farm were added to the Minnesota wages, the total would greatly exceed the statutory limitation. A majority of the WCCA panel agreed with the compensation judge's view that the Wessels have basically two separate farm operations. The majority, therefore, concluded the legislature had been "interested in reg-

---

1. Following his injury, Meyering sustained a nonwork-related death. His widow brings this proceeding. For purposes of the opinion, however, we will consider Meyering as being the appellant.

2. Section 176.041, subd. 1 (1984) excludes employees of a "family farm" from workers' compensation coverage, and section 176.011, subd. 11a, defines family farm as follows:

   Subd. 11a. Family farm. *"Family farm" means any farm operation which pays or is obligated to pay less than $8,000 in cash wages, exclusive of machine hire, to farm laborers for services rendered during the preceding calendar year.* For purposes of this subdivision, farm laborer does not include any spouse, parent or child, regardless of age, of a farmer employed by the farmer, or any executive officer of a family farm corporation as defined in section 500.24, subdivision 2, or any spouse, parent or child, regardless of age, of such an officer employed by that family farm corporation, or other farmers in the same community or members of their families exchanging work with the employer. Notwithstanding any law to the contrary, a farm laborer shall not be considered as an independent contractor for the purposes of this chapter; provided that a commercial baler or commercial thresherman shall be considered an independent contractor.
   (Emphasis added).

ulating family farm operations in Minnesota without consideration of other business activities which an employer may have in other states."

To the contrary, the dissenting judge read "any farm operation," as used in Minn.Stat. § 176.011, subd. 11a (1984), as including all aspects of the employer's farming business, whether in Minnesota or Iowa, and no matter how far the geographical separation. If this interpretation is accepted, it follows the "family farm" exclusion is inapplicable, and that dismissal of Meyering's workers' compensation claim was erroneous.

■ Arguably, the workers' compensation judge, in ruling the "family farm" exclusion was here applicable, made a finding of fact. If her conclusions were factual findings, without doubt evidence does exist to support them. Therefore, in affirming, the majority of the Workers' Compensation Court of Appeals correctly applied the review standards set forth in *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). However, it appears to us the determination of whether Wessels' Minnesota farm operation comes within the "family farm" exclusion is a conclusion of law, or, at least, a mixed question of fact and law. As such, a lower court ruling does not bind this court, and we can independently review the ruling on appeal. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

Turning, then, to the statute, few clues relative to legislative intent are ascertainable from the precise statutory language. The statute itself merely defines "family farm" as one where the operator paid less than $8,000 in cash wages the preceding calendar year. This, of course, does not aid us in determining whether the legislature intended the exclusion to apply to geographically separated farm operations conducted by the same person when the total of cash wages paid to employees on all operations exceeded $8,000. Nor does it provide us with a clue as to whether the legislature intended the exclusion from

workers' compensation coverage to apply to those who conducted essentially separate farm operations, one of which is in Minnesota, and the other or others in foreign states.

While being far from conclusive, the legislative history of section 176.011, subdivision 11a suggests that "family farm" as used in the statute refers to only those small farm operations where cash paid to farm help is incidental. Historically, in Minnesota, as well as in other states, farm operators were excluded from the burden of providing workers' compensation coverage for farm employees. In Minnesota this exclusion early survived constitutional challenge. *See Mathison v. Minneapolis Street Railway Co.*, 126 Minn. 286, 148 N.W. 71 (1914). The exclusion of farm operations from mandatory workers' compensation coverage seemed clearly to reflect the legislative policy of the state, at least until 1971. In *Nelson v. Harder Royal Breeders, Inc.*, 290 Minn. 302, 187 N.W.2d 634 (1971), this court, while noting that modern large-scale farming involves similar employee hazards as do many industrial operations, stated: "If the employees on large-scale farms are to be covered by workmen's [sic] compensation, * * * it must be done by the legislature." *Id.* at 307, 187 N.W.2d at 637. Perhaps in response to *Nelson*, the 1973 legislature enacted the forerunner of Minn.Stat. § 176.011, subd. 11a and altered Minn.Stat. § 176.041, subd. 1. In doing so, the previous broad general exclusion for farmers was modified to impose workers' compensation liability on farm operations where annual cash wages paid farm laborers were more than minimal.

The original statute modifying the agricultural exclusion, contained a less than $2,000 cash wage provision that triggered the family farm exclusion. *See* Act of May 24, 1973, ch. 657, § 1, 1973 Minn.Laws 1742. Subsequent legislatures have increased the amount of cash wages paid before the exclusion is lost. *See* Act of March 23, 1978, ch. 574, 1978 Minn.Laws 312, and Act of April 11, 1980, ch. 556,

§ 12, 1980 Minn.Laws 753, 761. Now farmers lose the exclusion only if wages exceed $8,000. The act of the legislature in 1973 of severely limiting what previously had been a broad general exclusion to one that exists only where minimal cash wages are paid, suggests to us a legislative intention to include large mechanized farm operations in the workers' compensation scheme, and to limit the exclusion to prevent hardship only to those small farm operations basically run by resident family members with a minimal amount of labor requiring payment of cash wages. The post-1973 increases in the dollar amount of cash wages which, if exceeded, triggers mandatory coverage, in our view, reflects more a recognition of inflationary forces on cash wages, than another shift in legislative policy toward reinstitution of a broad general agricultural exclusion.

In common usage, the phrase "family farm" connotes the operation of a farm by one or more family members who reside on the farm or are actually engaged in farming it. *See* Minn.Stat. § 645.08(1) (1984) (courts are to give statutory words their commonly understood meaning). In another context, the legislature has incorporated that widely understood connotation into a statutory definition of "family farm." *See* Minn.Stat. § 500.24, subd. 2(b) (1984).

We do not hold that in all cases when a family operates two or more autonomous farms, that the family farm exclusion is to be determined by the aggregation of cash wages paid to farm laborers on all such farms. In this case, however, while the facts are admittedly close, it appears that Wessels' operation of the Minnesota farm was merely an extension of the operation of the Iowa farm. The Minnesota farm was a cash grain crop operation. No member of the Wessels family resided on or near the land. Instead, they resided on or near the Iowa farm. The crops on the

Minnesota farm were planted, cultivated, and harvested by the use of two employees (out of a total of perhaps nine) who apparently worked on both farms, although the bulk of Meyering's labor was on the Minnesota farm. The same grain combine was used on both farms to harvest the crops. When these facts are considered in light of the legislative history, we conclude it was not the intention of the legislature to deny workers' compensation coverage to employees in the position of Meyering. Accordingly, we reverse and remand for a hearing on Meyering's claim.[3]

---

**3.** We have perceived an intention on the part of the legislature to retreat from the former general societal policy of excluding all farm operators from the obligation to carry workers' compensation coverage, and to limit the exclusion only to those small family farm operators who minimally employ help for cash wages. Should our perception be erroneous, the legislature, of course, is free to clearly further define and expand on the definition of "family farm" as presently found in Minn.Stat. § 176.011, subd. 11a.