John MORRISETTE, Respondent,

v.

HARRISON INTERNATIONAL CORP. and Aetna Life & Casualty Company, Relators,

and

Minnesota Department of Human Services, Minnesota Department of Jobs and Training UI, State Industrial Insurance System of Nevada, Intervenors, Respondents.

No. C6–91–1231.

Supreme Court of Minnesota.

June 26, 1992.

Rehearing Denied Aug. 6, 1992.

Kathy Endres, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for relators.

Raymond Peterson, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for John Morrisette.

Laura Sue Schlatter, Minn. Dept. of Human Services, St. Paul, for Dept. of Human Services.

Wilbur Fluegel, Sieben, Grose, et al., Minneapolis, for State Ind. Ins. System of Nevada.

Richard Rhode, MN Dept. of Jobs & Training, St. Paul, for Dept. of Jobs & Training.

GARDEBRING, Justice

This case arises from John Morrisette's application for Minnesota workers' compensation benefits, for injuries he received in 1983 while working in Nevada, and for which he had received workers' compensation benefits from the State Industrial Insurance System of Nevada (SIIS–Nevada). The compensation judge found that Morrisette was hired in Minnesota, and at the time of his injury his "transfer" to Nevada was not permanent, giving the court subject matter jurisdiction over Morrisette's claim under the extraterritorial provisions of Minnesota's Workers' Compensation Act, Minn.Stat. § 176.041 (1982). The compensation judge also found that SIIS–Nevada, the previous provider of workers' compensation benefits, properly intervened in compliance with Minn.Stat. § 176.361 (1982). The employer (Harrison) and insurer-relators (Aetna) appealed to the Workers' Compensation Court of Appeals, which affirmed on June 14, 1991. This appeal followed.

On January 11, 1983, John Morrisette, a 24–year–old electrical line worker, fell approximately 30 feet to the ground from atop a high power pole. The accident occurred in Ely, Nevada, where Morrisette was in his second day of employment with Electrical Distribution Contractors (EDC). Morrisette received multiple head and body injuries, was in a long-term coma and suffered permanent brain damage.

This tragic story began in the spring of 1982 when Morrisette was a student at the Dakota County Vocational Technical Institute, training to become an electrical line worker. Sometime that spring, Max Wilkinson, an employee of EDC, visited the school, talked with students about working for EDC, and passed out applications for employment. Morrisette filled out an application and mailed it to Wilkinson. After submitting his application, Morrisette cor-

responded with Wilkinson about the possibility of a job with EDC, sent EDC a report of a physical examination, and was interviewed by an EDC representative in Sioux Falls, South Dakota.

After the interview, Wilkinson telephoned Morrisette at his home in Minnesota and told him he had a job for him in Nevada. Morrisette accepted the job, and drove to Ely, Nevada, to begin work. Morrisette believed he had a job when he left Minnesota. Morrisette, whose injuries have affected his memory, cannot remember discussing with Wilkinson what his salary and benefits were to be, and he cannot recall being paid any travel expenses or per diem for his car trip to Nevada.

Wilkinson testified that he called Morrisette and "asked him if he wanted to come work for us. He [Morrisette] said 'Yes' * * *." Wilkinson, who was suffering from Alzheimer's disease at the time of his deposition, did not remember visiting the school or corresponding with Morrisette. He testified that EDC never paid the travel expenses for employees between job sites. He also testified that it was not EDC's policy to further interview anyone they had called to work for them after they arrived at the job site.

At the time of the accident, EDC was the name Harrison International Corporation (Harrison) was using to do its electrical line construction in the western United States. Harrison, a South Carolina corporation, was authorized to do business in Minnesota, and had appointed an agent for service of process. Harrison had obtained workers' compensation coverage in Minnesota through Aetna Life & Casualty.

EDC was in the business of constructing high power electrical transmission lines. EDC employees worked on projects mainly in the western United States, and were transient, moving from state to state to follow the line, or moving after being released at the end of an assignment and being recalled to a different job site. As far as Wilkinson knew, EDC had never had a job site in Minnesota.

When Morrisette accepted the job with EDC he knew that EDC had never worked in Minnesota, and probably never would. He understood that as an EDC employee he would travel from state to state to temporary job sites to construct electrical power lines. He hoped to gain some experience with EDC which would enable him to find work back in his home state of Minnesota. Morrisette intended to maintain his permanent residence in Minnesota. His wife remained at their home in Minnesota.

After his injury, SIIS–Nevada voluntarily instituted the payment of workers' compensation benefits to Morrisette. SIIS–Nevada paid a total of $165,001.08 to or on behalf of Morrisette, $106,596.29 for medical benefits and $58,404.79 in wage loss benefits. SIIS–Nevada discontinued paying benefits to Morrisette after Morrisette filed his application for benefits in Minnesota.

Morrisette's case was originally scheduled to be heard on September 4, 1987. However, on August 31, 1987, the case was stricken from the active calendar by order of the United States Bankruptcy Court, pending the disposition of a Harrison bankruptcy petition. The re-scheduled hearing took place June 26 and 30, 1990. On August 17, 1990, after the hearing, but prior to the issuance of the compensation judge's findings and order, SIIS–Nevada filed a motion to intervene.

■ This court's review of decisions of the Workers' Compensation Court of Appeals is limited. When reviewing findings of fact, this court views the facts in a light most favorable to the decision and will not disturb a finding unless it is manifestly contrary to the evidence or "it is clear that reasonable minds would adopt a contrary conclusion." *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn.1984). In reviewing questions of law determined by the Workers' Compensation Court of Appeals, this court is free to exercise its independent judgment. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

■ The first issue for this court's review is whether Morrisette is entitled to apply for benefits under the Minnesota Workers' Compensation Act. When Morri-

sette was injured, he was an employee of a foreign corporation and was working outside the state of Minnesota. The extraterritorial application of the Minnesota Workers' Compensation Act is limited by the terms of the statute itself. *See* Minn.Stat. § 176.041 (1990). Thus whether Morrisette's injury is compensable under the Minnesota Workers' Compensation Act will depend on whether the circumstances of his employment and injury fall within the applicable statute's extraterritorial application provisions. The substantive rights of employer and employee are fixed by the workers' compensation law in effect on the date of injury. *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304, 307 (Minn.1987), *appeal dismissed*, 484 U.S. 1052, 108 S.Ct. 1001, 98 L.Ed.2d 968 (1988).

At the time of Morrisette's injury on January 11, 1983, the Minnesota statute's extraterritorial provisions applicable to injuries occurring outside of Minnesota were found at Minn.Stat. § 176.041, subdivisions 2 and 3 (1982). These provisions are as follows:

> Subd. 2. **Extra-territorial application.** If an employee who regularly performs the primary duties of his employment within this state, *or who is hired within this state,* receives an injury while outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury *unless the transfer is normally considered to be permanent.* If a resident of this state is transferred outside the territorial limits of the United States as an employee of a Minnesota employer, he shall be presumed to be temporarily employed outside of this state while so employed.

> Subd. 3. **Temporary out-of-state employment.** If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside of this state, such injury shall be subject to the provisions of this chapter. If the employer's business is in Minnesota and the employee's residence is in Minnesota, employment outside of this state shall be considered temporary.

Minn.Stat. § 176.041, subd. 2 and 3 (1982) (emphasis added).[1] To be entitled to benefits under this section of the act Morrisette must show that he was hired in Minnesota and that his transfer to Nevada was not one normally considered to be permanent.

■ If in dispute, the existence and terms of a contract are questions for the fact finder. *McEwen v. State Farm Mut. Ins.*, 281 N.W.2d 843, 846 (Minn.1979). Where Morrisette was hired was a disputed question of fact. The compensation judge found that Morrisette was hired in Minnesota, and the Workers' Compensation Court of Appeals affirmed. Given this court's limited review over findings of fact, the finding may only be overturned if it is manifestly contrary to the evidence. *Hengemuhle*, 358 N.W.2d at 61. In determining whether a contract was formed a court does not need to rely on words alone, but can "consider the surrounding facts and circumstances in the context of the entire transaction, including the purpose, subject matter, and nature of it." *Capital Warehouse Co. v. McGill–Warner–Farnham Co.*, 276 Minn. 108, 114, 149 N.W.2d 31, 35 (1967). The record reveals that Morrisette learned of the job with EDC from Max Wilkinson, who visited Minnesota and the Dakota County Vocational Technical Institute as an EDC representative. Morrisette applied for the job by mail with an applica-

1. In 1986, the Legislature amended Minn.Stat. § 176.041, subd. 2, further limiting the statute's extraterritorial application. The statute, as amended, now reads:
   Subd. 2. **Extraterritorial application.** If an employee who regularly performs the primary duties of employment within this state receives an injury while outside of this state in the employ of the same employer, the provisions of this chapter shall apply to such injury. If a resident of this state is transferred outside the territorial limits of the United States as an employee of a Minnesota employer, the resident shall be presumed to be temporarily employed outside of this state while so employed.
   Subd. 3. **Temporary out-of-state employment.** If an employee hired in this state by a Minnesota employer, receives an injury while temporarily employed outside this state, such injury shall be subject to the provisions of this chapter.
   Minn.Stat. § 176.041, subds. 2 and 3 (1990).

tion he received at the school, and had an interview with EDC representatives in South Dakota. Max Wilkinson called Morrisette, at his home in Minnesota, offered him the job in Nevada, and Morrisette accepted. There is no evidence in the record that EDC reserved the right to reject workers they called to the job site, and Wilkinson testified that EDC did not further interview its new workers once they were called and reported to the job site.

From a review of the record and the facts and circumstances surrounding Morrisette's employment with EDC, the determination that Morrisette was hired in Minnesota is not manifestly contrary to the evidence, and thus, under *Hengemuhle*, we affirm the finding of the compensation judge and Workers' Compensation Court of Appeals.

■ Under the extraterritorial provisions in effect at the time of Morrisette's injury, even if an employee injured on a job outside Minnesota was hired in Minnesota, the employee still must prove that the "transfer" out of Minnesota was not one "normally considered to be permanent." *See* Minn. Stat. § 176.041, subd. 2 (1982). Morrisette asserts that the job in Nevada was not a permanent one for him because he did not intend to stay there or with EDC permanently. He intended to keep his permanent residence in Minnesota where his wife was living, and move back when he got the chance. There is also evidence in the record that there was really no permanent job site or location for the EDC electrical line workers, and that they traveled from state to state working on temporary projects until completion. Harrison asserts that Morrisette's employment with EDC was permanent, in the sense that it had no specified ending date, and that Morrisette's assignment outside Minnesota was a permanent "transfer" because Morrisette knew that it was not very likely he would ever work on a job for EDC in Minnesota. Reviewing the record, the Workers' Compensation Court of Appeals found that substantial evidence supported the compensation judge's finding that Morrisette's transfer out of the state was not permanent.

■ The legislature has not defined the word "transfer" in the statute. As we read the statute, the legislature, in using the word "transfer," intended the ordinary sense of that term, the moving of an employee from a job in this state to a job in another state. Morrisette was hired in Minnesota to work in Nevada. He was not hired to work in Minnesota and then transferred to Nevada. Harrison never assigned Morrisette to work in Minnesota and then moved him to another job in a different state, thus there was never a transfer. Our definition of the word "transfer" above is consistent with our earlier case construing the phrase "normally considered to be permanent." *See Schroeder by Schroeder v. Murphy Motor Freight Lines, Inc.*, 372 N.W.2d 706 (Minn.1985).

We find that Morrisette was not transferred to Nevada, and thus his injuries are not compensable under Minn.Stat. § 176.-041, subd. 2 (1982). Because Morrisette is not entitled to Minnesota workers' compensation benefits, we do not reach the questions of whether SIIS–Nevada was a proper intervenor and whether its intervention was timely.

Affirmed in part and reversed in part.