**REINSURANCE ASSOCIATION OF MINNESOTA, Respondent,**

v.

**Robert JOHANNESSEN, et al., Respondents,**

**Randall D. Decker, Appellant.**

**No. C1–93–1965.**

Court of Appeals of Minnesota.

May 24, 1994.

Steven L. Reyelts, Aaron R. Bransky, Halverson Watters Bye Downs Reyelts & Bateman, Ltd., Duluth, for Reinsurance Ass'n of Minnesota.

James B. Wallace, Park Rapids, for Robert Johannessen, et al.

Charles A. Krekelberg, Nathan L. Seeger, Williams, Nitz, Krekelberg Sorkness & Seeger, Fergus Falls, for Randall D. Decker.

Considered and decided by KLAPHAKE, P.J., and SHORT and DAVIES, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Randall D. Decker challenges the trial court's conclusion that respondent insurer is not liable for coverage in a declaratory judgment action. We affirm.

## FACTS

Robert and Bonnie Johannessen operate a 600-acre dairy farm, with a milking herd of 85 to 90 cows. In 1989 the Johannessens employed appellant Randall D. Decker to plow the fields, plant crops, tend the livestock, and perform minor maintenance on the farm machinery.

On August 1, 1989, Decker was injured on the Johannessens' farm. Decker had been working with Robert Johannessen and another farm laborer on a self-propelled swather. The three had just mounted and started a new engine on the swather when a drive pulley broke from the engine's crankshaft and struck Decker, injuring him. In the preceding year, the Johannessens had paid Decker and one other farm laborer wages of more than $2,000.

Decker sued the Johannessens for damages for his bodily injuries. The Johannessens tendered defense to their farm liability insurer, respondent Reinsurance Association of Minnesota ("RAM"). RAM brought this declaratory judgment action against Decker and the Johannessens for a determination that the Johannessens' farm liability policy provides no coverage for Decker's bodily injury claim.

At trial, Decker submitted three grounds for policy coverage. The trial court made written findings and concluded that the policy unambiguously did not cover the injuries. Decker appeals.

## ISSUES

I. Did the trial court err in concluding that the policy is unambiguous?

II. Did the trial court err in concluding that the insureds had no reasonable expectation of coverage?

## ANALYSIS

### I.

Decker argues the trial court erred in concluding that the farm liability policy is unambiguous. Whether the language of an insurance policy is ambiguous is a question of law. *Columbia Heights Motors, Inc. v. Allstate Ins.*, 275 N.W.2d 32, 34 (Minn.1979). When the language of an insurance policy is reasonably subject to more than one interpretation, the policy is ambiguous. *Id.* Ambiguity may also result from an irreconcilable conflict between terms or provisions within the policy. *Rusthoven v. Commercial Standard Ins.*, 387 N.W.2d 642, 644 (Minn.1986). A policy's complexity alone, however, does not make it ambiguous. *Farmers Home Mut. Ins. v. Lill*, 332 N.W.2d 635, 637–38 (Minn.1983).

We agree with the trial court that the policy is clear and unambiguous. As the trial court pointed out, "it is apparent from reading the declaration sheet that the policy insured only 'farm employees—$2000 or less in payroll.'" This liability limitation is prominently located on the declaration sheet and is not in fine print. It is well established that the declarations pages of an insurance policy are a crucial part of the policy, and interpretation of the declarations is important to determine the scope of the policy. *Seaway*

*Port Auth. of Duluth v. Midland Ins.*, 430 N.W.2d 242, 248 (Minn.App.1988) (citing *Lill*, 332 N.W.2d at 637).

Read as a whole, the liability policy covers only occasional, low wage farm laborers.[1] It does not purport to be a workers' compensation substitute. The liability provision contains an express condition of liability. Coverage extends to "a farm employee while performing duties in connection with the farming operations * * * *only if* total remuneration to all farmer employees * * * is $2,000 or less." (Emphasis added.)[2] A farm employee is defined as an employee of any insured whose duties are in connection with the farming operations of the insured.

Decker admits that he is a farm employee who earned more than $2,000 in the year preceding the accident, but he contends that he falls within two policy definitions of the term "insured." As an "insured," he would not be subject to the exclusion for earning more than $2,000 and therefore would be covered.

Decker first turns to the policy's personal liability form which defines an "insured" as: "[A]ny person *while performing duties* as a domestic employee."[3] (Emphasis added.) It is clear that Decker does not meet this definition of "insured" simply because he was not "performing duties as a domestic employee." The record shows that Decker was hired as a farm laborer. He was not performing "personal needs" or "personal household related matters" on behalf of the Johannessens. Rather, he helped operate a 600–acre dairy farm and was helping repair farm machinery when he was hurt.

---

1. The policy has an express liability exclusion for bodily injury if benefits are payable or required under workers' compensation or other occupational laws.

2. The relevant liability provision states:
   3. Employer's Liability—Farm Employees. Coverage L–Personal liability and Coverage M–Medical Payments to Others are extended to apply to bodily injury to a farm employee while performing duties in connection with the farming operations of an insured.
   This provision, however, is immediately followed by two express conditions, one of which states:
   b. We agree to provide this coverage *only if total remuneration to all farmer employees, oth-*

*er than persons insured, is $2000 or less* in the 365 days preceding the date of occurrence. (Emphasis added.)

3. The policy's definition states:
   Domestic Employee means a person employed by an insured to perform duties in connection with the maintenance or use of the insured premises. This includes persons who perform household or domestic services or duties of a similar nature elsewhere for an insured. This does not include persons while performing duties in connection with an insured's business.

The repair of farm implements falls within the business of farming and the duties of a farm employee. It does not fall within the ordinary and generally understood duties of a "domestic employee." *See West Bend Mut. Ins. v. Milwaukee Mut. Ins.*, 384 N.W.2d 877, 880 (Minn.1986) (words in insurance policies should be given their ordinary and generally understood meaning); *see St. Paul Fire & Marine Ins. v. National Computer Systems*, 490 N.W.2d 626, 631 (Minn.App. 1992) (in construing insurance policies, terms must be given their plain, ordinary and popular meaning, to give effect to the parties' intention), *pet. for rev. denied* (Minn. Nov. 17, 1992). Moreover, Decker's interpretation of the policy[4] entirely negates the policy's separate definitions and treatment of "farm employees" and "domestic employees." An interpretation which "entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." *Wyatt v. Wyatt*, 239 Minn. 434, 437, 58 N.W.2d 873, 875 (1953). Thus, the trial court did not err in finding that Decker was not a domestic employee. *See* Minn.R.Civ.P. 52.01.

█ Alternatively, Decker argues that he meets another policy definition of "insured," which states:

    c. A person while performing duties as a farm employee of an insured is an insured *with respect to farm implements* and other vehicles covered under this policy.

(Emphasis added.) Because the self-propelled swather is a "farm implement," Decker argues that he falls within this policy definition of an "insured."

Again, we disagree with Decker's interpretation because it isolates words and phrases from their context rather than giving them meaning in accordance with the obvious purpose of the whole policy. *See Motor Vehicle Casualty Co. v. Smith*, 247 Minn. 151, 157, 76 N.W.2d 486, 491 (1956) (rejecting "interpretation by dissection"). Read in isolation, Decker may fall under this farm implement provision. Read in context, it is clearly inapplicable.

Liability insurance is:

That type of insurance protection which indemnifies one from liability to third persons as contrasted with insurance coverage for losses sustained by the insured.

Black's Law Dictionary 473 (6th ed. 1990). In this case, the personal liability form is designed to indemnify Decker from liability if he is driving or operating a farm implement and has an accident with a third party. In that case, the policy would indemnify Decker from any claims brought by the third party against him. The liability provision, however, is not designed to cover losses sustained by Decker himself in the accident. Therefore, the trial court correctly concluded that Decker was not covered by this provision of the policy.

In summary, under the unambiguous policy, Decker was a farm employee performing farm duties. As such, he was expressly excluded from coverage because Johannessens' policy did not cover farm employees if all farm employees were paid more than $2,000 during the 365 days preceding the accident. Therefore, the trial court did not err in rejecting Decker's claim.

## II.

█ Decker contends that he is covered by the policy under the doctrine of reasonable expectations. He argues that the Johannessens had a reasonable expectation for coverage under the doctrine in *Atwater Creamery Co. v. Western Nat'l Mut. Ins.*, 366 N.W.2d 271, 277–79 (Minn.1985). The doctrine is generally applied to protect individuals where the insurance policy terms have been misrepresented or misunderstood, or where legal technicalities would defeat

---

4. Decker also argues that he held a dual status under the policy definitions—both as a "farm employee" and as a "domestic employee." *See Hall v. United States Fidelity & Guaranty Co.*, 107 Ohio App. 13, 18, 155 N.E.2d 462, 465 (1957) (holding that being a "farm laborer" does not necessarily prevent one from also being in domestic employment). This interpretation of the policy, however, contradicts the language and purpose of the policy. It is also unreasonable because it nullifies the $2,000 remuneration exclusion. Therefore, we decline to follow the Ohio court's reasoning.

coverage which the insured reasonably believed was in place. *See id.* at 276–77.

There is no evidence in the record, however, that the insured was actually misled. The doctrine should not be applied where a prominent policy term excludes coverage and the evidence does not indicate the insured was misled. *Marschall v. Reinsurance Ass'n of Minn.*, 447 N.W.2d 460, 462 (Minn.App. 1989). Because the contract is unambiguous, and the evidence does not support a finding that the insured was misled, we decline to apply the reasonable expectations doctrine to this case.

### DECISION

The trial court correctly concluded that the farm liability insurance policy unambiguously excluded farm laborers, such as Decker, earning an aggregate wage of $2,000 or more in the 365 days preceding the accident. The policy clearly delineated "farm employees" from "domestic employees." It did not cover losses sustained by a farm employee while operating a farm implement. Absent an ambiguity and facts showing that the insured was misled, the insured had no reasonable expectation of coverage.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

The doctrine of reasonable expectations should be applied here. That doctrine allows a court to construe an insurance policy without relying on "arbitrary rules which do not reflect real-life situations." *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn.1985). The doctrine recognizes that "people purchase insurance relying on others, the agent or company, to provide a policy that meets their needs." *Id.* at 277. Further, nothing in *Atwater*

suggests that the doctrine of reasonable-expectations is not to be applied except in the presence of peculiar circumstances such as ambiguity or a hidden exclusion. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 311 (Minn.1989).

A farmer purchasing comprehensive liability insurance expects protection against ordinary, everyday risks—certainly including liability coverage for employee injuries when workers' compensation does not apply. A farmer does not expect any subtle, but serious, gaps in "comprehensive" coverage.

In this case, the Johannessens paid a premium to obtain comprehensive coverage. It was their reasonable expectation that the policy would cover claims by injured employees. Their insurance broker himself sold the policy under the belief that it would cover claims of Johannessens' workers if injured in the course of their employment.[1] The broker, who had been in the insurance business for 16 years, admitted that he initially believed that the claim was covered under the policy; and even after he had studied the policy, including its declaration page, he could not be certain that it did not cover the Johannessens' employee's claim.

Two lines on the declarations pages are relevant. The first reads:

$100,000 Coverage L—Personal Liability (Each Occurrence).

A few lines below that line appears,

9303 INCL. INSURED FARM EMPLOYEES—$2,000 OR LESS IN PAYROLL.

The majority interpret this second line, as did the trial court, to be an exclusion of farm-employee coverage if employees are paid more than $2,000 in wages annually. In reality, the line—starting with "incl."—does not state an exception to the $100,000 per-

---

1. In his deposition, the broker was asked and answered the following:

Q. Was it your impression that if Mr. Johannessen didn't pay Eight Thousand ($8,000) Dollars in the previous calendar year, that employees injured on the property were covered when you wrote that policy in '86?
A. You're referring to what my thoughts were in '86?

Q. Right. Up until Mr. Decker's accident.
A. Yes.
Q. And is that the basis of why you told them that when they reported the accident of Mr. Decker, that you felt that they did have coverage for it?
A. I felt that they should have coverage.

sonal liability coverage, but is rather inserted to define one element affecting the premium.

It is comparable to a provision typed on the declarations page in an automobile policy that says "multiple vehicle and air bag discounts have been applied," or "auto and home premium advantage discounts have been applied," or "50+ premium plan discount has been applied" or "vehicle symbol-16, class city-7A, territory-4"; or a provision typed on the declarations page of a life insurance policy that says "insured's age—45"; or provisions typed on the declarations page in a homeowner's fire policy that say " * * * family framed dwelling" "in town class 3." All of these declaration page provisions relate, not to the extent of coverage, but to the cost of coverage.

In this case the troublesome line—troublesome to the majority (and thus, unfortunately, to the appellant)—is numbered "9303." In the application for insurance is a page entitled "Schedule of Annual Rates." There appears on it no reference to factor 9303, but there is reference to numbers sequential to it—9302 and 9301—which suggests some relationship between these three items. Line 9301 identifies a situation where the farmer-applicant has "FULL–TIME Employees $5,000–7,999.99 Payroll" and designates premium surcharges of $14.00, $18.00, $23.00, and $27.00 for coverages of $50,000, $100,000, $300,000, and $500,000, respectively. Line 9302, in turn, reads "PART–TIME Employees $2,000–4999.99 Payroll" and designates premium surcharges of $5.00, $6.00, $8.00, and $10.00. These provisions identify, based on the answer of the applicant, the premium that will be charged.

In this case, with $100,000 of coverage, if the employee wages disclosed had been above $5,000, the extra charge would be $18.00 (identified by 9301). Because the employee wages were, in fact, between $2,000 and $5,000, the extra charge should have been $6.00 (identified by 9302). And, by implication, if the employee wages were less than $2,000 (as represented by Johannessen), the extra charge would be $0; and, as occurred, it would be identified on the policy declarations page by the sequential line number 9303. Thus, the declarations pages do not, in fact, contradict the Johannessens' reasonable expectations.[2]

Now to the body of this strikingly complex printed policy and the provision that actually cost the Johannessens coverage:

> 3. **Employer's Liability—Farm Employees** Coverage L—Personal Liability
> * * *
>
> b. **We** agree to provide this coverage only if total remuneration to all **farmer employees,** other than persons insured, is $2,000 or less in the 365 days preceding the date of occurrence.

(Emphasis in original.)

The history of how the workers' compensation has been applied to farm employees explains how this $2,000 exclusion showed up in the Johannessens' policy to deny them their reasonable expectations.

All farm operations were originally excluded from workers' compensation. In 1971, however, the Supreme Court urged that farm workers be covered by workers' compensation, noting:

> Modern farming on a large scale involves the same hazards as many industrial operations. If the employees on large-scale farms are to be covered by workmen's compensation, however, it must be done by the legislature.

*Nelson v. Harder Royal Breeders, Inc.,* 290 Minn. 302, 307, 187 N.W.2d 634, 637 (1971). In 1973, the Minnesota Legislature responded to the Supreme Court suggestion by requiring all farmers who paid more than *$2,000* in annual wages to provide workers' compensation to their employees. Small farm operations—defined as those paying less than $2,000 a year in wages—were left, however, subject to common law liability. 1973 Minn. Laws ch. 657. Then, in 1978, the legislature modified the law so that more farmers, those who paid up to *$4,000* in annual wages, were again excluded from workers' compensation—and again exposed to com-

---

2. Perhaps the doctrine of reasonable expectations is not required here. Simply applying the general rule that ambiguities in insurance policies are read against the insurer might be sufficient.

mon law tort liability. 1978 Minn. Laws ch. 574. In 1980, the amount was raised to $8,000. 1980 Minn. Laws ch. 556, § 12. That is the law today.

Those farmers excluded from workers' compensation routinely protect themselves by purchasing comprehensive liability insurance policies, policies more or less similar to the one purchased by the Johannessens. Unfortunately, the Johannessens' insurer, Reinsurance Association of Minnesota (RAM), used a comprehensive personal liability policy form that retains the $2,000 limit on employee wages dating back to the 1973–78 law. Thus, when read literally, the RAM "comprehensive" policy—without any basis in law, reason or logic, but solely as a historical accident—creates a gap in liability coverage for any farmer who pays more than $2,000 in annual wages and does not also buy a workers' compensation policy (an obligation that starts at $8,000). I see no reason for denying the Johannessens coverage simply because RAM failed to replace its obsolete form with one that reflects the current dividing line between workers' compensation and common law liability, a law that has been in effect since 1980! [3]

I note that the majority says the policy "does not purport to be a workers' compensation substitute." That is true, but the policy does purport to provide comprehensive liability coverage, which sounds like a contract to cover farmers up to the point where they are obligated to carry workers' compensation. The Johannessens had no obligation under Minnesota law to carry workers' compensation because their employees earned nowhere near the $8,000 that triggers workers' compensation responsibility. RAM did not give them a choice of a policy other than the one with the $2,000 limitation. There was no quotation to them of a price on a policy with an $8,000 floor rather than the $2,000 floor. There was no evidence presented that the insurer offered as a choice of coverage an endorsement with the appropriate $8,000 figure to cancel out the $2,000 limit.

The Johannessens had a reasonable expectation that RAM would keep its policies up-to-date and thus provide appropriate coverage. I would reverse and remand on the basis of reasonable expectations.

I would alternatively treat this case as an appropriate occasion for reformation of the insurance policy. It is unconscionable for RAM to claim an *intent* to leave the gap in coverage that blind-sides the Johannessens. And it is obvious that the Johannessens had no intent to buy such a defective comprehensive liability policy. This court should order that the 1970s policy form—pulled off some dusty shelf—be reformed to match the policy the parties intended to buy and to sell in the 1989 insurance marketplace.

There is yet a third reason for a reversal. It is unconscionable for the company to sell—without conspicuous notice—a policy that leaves such a devastating gap in coverage. That defect is in no way relieved by the fact that an action is proceeding against the agent for failure to obtain the appropriate coverage. For RAM to sell such a defective policy is unconscionable, independent of agent liability. Thus, I would rule that to have any number other than $8,000 in the exclusion is an unconscionable—and invalid—provision.

I would reverse.

---

3. The only possible reason for denying coverage that I can discern would be misrepresentation on the application. But no misrepresentation has been found and neither insurer nor trial court nor majority even assert that theory, let alone rely on it.